## JEWETT ET UX. *v.* COMMISSIONER OF INTERNAL REVENUE

No. 80–1614.   Argued December 1, 1981—Decided February 23, 1982

STEVENS, J., delivered the opinion of the Court, in which BURGER, C. J., and BRENNAN, WHITE, MARSHALL, and POWELL, JJ., joined. BLACKMUN, J., filed a dissenting opinion, in which REHNQUIST and O'CONNOR, JJ., joined, *post*, p. 319.

*James D. St. Clair* argued the cause for petitioners.   With him on the briefs were *John G. Fabiano, Timothy H. Gailey,* and *Christopher T. Carlson.*

*Stuart A. Smith* argued the cause for respondent.   With him on the brief were *Solicitor General Lee, Acting Assistant Attorney General Murray,* and *Jonathan S. Cohen.**

---

*Briefs of *amici curiae* urging reversal were filed by *Robert L. Stern* for Mayer, Brown & Platt; and by *Charles C. Parlin, Jr.,* and *Robert A. Bergquist* for Adelaide C. Griswold et al.

*Coleman Burke, Wallace B. Liverance, Jr.,* and *Geoffrey J. O'Connor* filed a brief for the Estate of Helen W. Halbach, John Poiner, Executor, as *amicus curiae.*

JUSTICE STEVENS delivered the opinion of the Court.

A trust beneficiary's refusal to accept ownership of property may constitute an indirect gift to a successor in interest subject to federal gift tax liability. 26 U. S. C. §§ 2501, 2511. Under Treasury Regulation § 25.2511–1(c), however, such a refusal is not subject to tax if it is effective under local law and made "within a reasonable time after knowledge of the existence of the transfer." The petitioner husband (hereafter petitioner) in this case executed disclaimers of a contingent interest in a testamentary trust 33 years after that interest was created, but while it was still contingent. The narrow question presented is whether the "transfer" referred to in the Regulation occurs when the interest is created, as the Government contends, or at a later time when the interest either vests or becomes possessory, as argued by petitioner.

Petitioner's grandmother, Margaret Weyerhaeuser Jewett, died in 1939 leaving the bulk of her substantial estate in a testamentary trust. Her will, executed in Massachusetts, provided that the trust income should be paid to petitioner's grandfather during his life, and thereafter to petitioner's parents. Upon the death of the surviving parent, the principal was to be divided "into equal shares or trusts so that there shall be one share for each child of my said son [petitioner's father] then living and one share for the issue then living representing each child of my said son then dead." App. 9. Petitioner's mother is the sole surviving life tenant. Thus, under the testamentary plan, if petitioner survived his mother, he would receive one share of the corpus of the trust; if he predeceased his mother, that share would be distributed to his issue. Since petitioner's parents had two children, his share of the trust amounted to one-half of the principal.

In 1972, when petitioner was 45 years old, he executed two disclaimers. The disclaimers each recognized that petitioner had "an interest in fifty percent (50%) of the trust estate . . . provided that he survives" his mother. *Id.*, at 15. In the

first disclaimer, petitioner renounced his right to receive 95% "of the aforesaid fifty percent (50%) of the remainder of the trust estate," *ibid.;* in the second he renounced his right to the remaining 5%. In 1972 the value of the trust exceeded $8 million.

Petitioner and his wife filed gift tax returns for the third and fourth quarters of 1972 in which they advised the Commissioner of the disclaimers, but did not treat them as taxable gifts.[1] The Commissioner assessed a deficiency of approximately $750,000. He concluded that the disclaimers were indirect transfers of property by gift within the meaning of §§ 2501(a)(1)[2] and 2511(a)[3] of the Internal Revenue Code, and that they were not excepted from tax under Treas. Reg. § 25.2511–1(c)[4] because they were not made "within a

---

[1] Petitioner's wife, Lucille M. Jewett, elected to consent to treat the gifts made by her husband as having been made by both husband and wife to the extent allowed by law. App. to Pet. for Cert. A–20.

[2] "A tax, computed as provided in section 2502, is hereby imposed for each calendar quarter on the transfer of property by gift during such calendar quarter by any individual resident or nonresident." 26 U. S. C. § 2501(a)(1).

[3] "Subject to the limitations contained in this chapter, the tax imposed by section 2501 shall apply whether the transfer is in trust or otherwise, whether the gift is direct or indirect, and whether the property is real or personal, tangible or intangible; but in the case of a nonresident not a citizen of the United States, shall apply to a transfer only if the property is situated within the United States." 26 U. S. C. § 2511(a).

[4] "The gift tax also applies to gifts indirectly made. Thus, all transactions whereby property or property rights or interests are gratuitously passed or conferred upon another, regardless of the means or device employed, constitute gifts subject to tax. See further § 25.2512–8. Where the law governing the administration of the decedent's estate gives a beneficiary, heir, or next-of-kin a right to completely and unqualifiedly refuse to accept ownership of property transferred from a decedent (whether the transfer is effected by the decedent's will or by the law of descent and distribution of intestate property), a refusal to accept ownership does not constitute the making of a gift if the refusal is made within a reasonable time after knowledge of the existence of the transfer. The refusal must be

reasonable time after knowledge" of his grandmother's transfer to him of an interest in the trust estate. Petitioner then filed this action in the Tax Court seeking a redetermination of the deficiency.

In the Tax Court and in the Court of Appeals, petitioner argued that at the time the disclaimers were made he had nothing more than a contingent interest in the trust, and that the "reasonable time" in which a tax-free disclaimer could be made did not begin to run until the interest became vested and possessory upon the death of the last surviving life tenant.[5] Although a comparable argument had been accepted

---

unequivocable [sic] and effective under the local law. There can be no refusal of ownership of property after its acceptance. Where the local law does not permit such a refusal, any disposition by the beneficiary, heir, or next-of-kin whereby ownership is transferred gratuitously to another constitutes the making of a gift by the beneficiary, heir, or next-of-kin. In any case where a refusal is purported to relate to only a part of the property, the determination of whether or not there has been a complete and unqualified refusal to accept ownership will depend on all of the facts and circumstances in each particular case, taking into account the recognition and effectiveness of such a purported refusal under the local law. In the absence of facts to the contrary, if a person fails to refuse to accept a transfer to him of ownership of a decedent's property within a reasonable time after learning of the existence of the transfer, he will be presumed to have accepted the property. In illustration, if Blackacre was devised to A under the decedent's will (which also provided that all lapsed legacies and devises shall go to B, the residuary beneficiary), and under local law A could refuse to accept ownership in which case title would be considered as never having passed to A, A's refusal to accept Blackacre within a reasonable time of learning of the devise will not constitute the making of a gift by A to B. However, if a decedent who owned Greenacre died intestate with C and D as his only heirs, and under local law the heir of an intestate cannot, by refusal to accept, prevent himself from becoming an owner of intestate property, any gratuitous disposition by C (by whatever term it is known) whereby he gives up his ownership of a portion of Greenacre and D acquires the whole thereof constitutes the making of a gift by C to D." Treas. Reg. § 25.2511–1(c), 26 CFR § 25.2511–1(c) (1981).

[5] As did the Tax Court, we assume that petitioner's interest in the trust is properly characterized as a contingent remainder. Although that interest is arguably a vested remainder subject to divestiture, the distinction is

by the Court of Appeals for the Eighth Circuit in *Keinath* v. *Commissioner*, 480 F. 2d 57 (1973),[6] it was rejected by the Tax Court[7] and by the Ninth Circuit[8] in this case. We granted certiorari to resolve the conflict. 452 U. S. 904.

Petitioner relies heavily on the plain language of the Treasury Regulation and on early decisions that influenced its draftsmen. Before analyzing that language and its history, it is appropriate to review the statutory provisions that the Regulation interprets.

## I

Section 2501(a)(1) of the Internal Revenue Code imposes a tax "on the transfer of property by gift." Section 2511(a) provides that the tax shall apply "whether the gift is direct or indirect, and whether the property is real or personal, tangible or intangible." As the Senate[9] and House[10] Reports explain:

> "The terms 'property,' 'transfer,' 'gift,' and 'indirectly' are used in the broadest and most comprehensive sense; the term 'property' reaching every species of right or interest protected by law and having an exchangeable value."

In *Smith* v. *Shaughnessy*, 318 U. S. 176, 180, the Court noted that "[t]he language of the gift tax statute, 'property

---

not one of substance for our purposes here. Cf. *Helvering* v. *Hallock*, 309 U. S. 106.

[6] In *Keinath*, the court applied "the prevailing common law rule" and held that the holder of a vested remainder interest subject to divestiture has a reasonable time after the death of the life beneficiary within which to renounce or disclaim the remainder without tax consequences. 480 F. 2d, at 64. The court emphasized that the holder of the remainder interest did not obtain a right to beneficial ownership and control of the property until the death of the life beneficiary. *Ibid.*

[7] 70 T. C. 430 (1978).

[8] 638 F. 2d 93 (1980).

[9] S. Rep. No. 665, 72d Cong., 1st Sess., 39 (1932).

[10] H. R. Rep. No. 708, 72d Cong., 1st Sess., 27 (1932).

. . . real or personal, tangible or intangible,' is broad enough to include property, however conceptual or contingent."

Our expansive reading of the statutory language in *Smith* unquestionably encompasses an indirect transfer, effected by means of a disclaimer, of a contingent future interest in a trust.[11] Congress enacted the gift tax as a "corollary" or "supplement" to the estate tax.[12] In *Estate of Sanford* v. *Commissioner*, 308 U. S. 39, 44, the Court explained that "[a]n important, if not the main, purpose of the gift tax was to prevent or compensate for avoidance of death taxes by taxing the gifts of property *inter vivos* which, but for the gifts, would be subject in its original or converted form to the tax laid upon transfers at death." Since the practical effect of petitioner's disclaimers was to reduce the expected size of his taxable estate and to confer a gratuitous benefit upon the natural objects of his bounty, the treatment of the disclaimers as taxable gifts is fully consistent with the basic purpose of the statutory scheme.

## II

The controlling Treasury Regulation provides that a refusal to accept ownership of property transferred from a decedent does not constitute a gift if two conditions are met. First, the refusal must be effective under the law governing the administration of the decedent's estate. Second, the re-

---

[11] The actual value of the interest will be affected by the fact that it is not indefeasibly vested. As the Tax Court noted in this case:

"The value of petitioner's remainder interest was not, of course, equal to 50 percent of the value of the trust corpus. Rather, it depended upon actuarial factors reflecting the various contingencies." 70 T. C., at 435, n. 3.

[12] The Committee Reports state that the gift tax was designed "to impose a tax which measurably approaches the estate tax which would have been payable on the donor's death had the gifts not been made and the property given had constituted his estate at his death. The tax will reach gifts not reached, for one reason or another, by the estate tax." H. R. Rep. No. 708, *supra*, at 28; S. Rep. No. 665, *supra*, at 40.

fusal must be made "within a reasonable time after knowledge of the existence of the transfer."

There is no dispute in this case that the first requirement has been satisfied; the disclaimers were effective under Massachusetts law. The controversy arises from the second requirement; specifically, it is over the meaning of the word "transfer," which may be read to refer to the creation of petitioner's remainder interest by his grandmother's will, or to either the vesting of that interest or the distribution of tangible assets upon the death of the life tenant. Both positions find support in the language of the Regulation.

To a layman the word "transfer" would normally describe a change in ownership of an existing interest rather than the creation of a new interest. Moreover, the reference to a transfer of "ownership of a decedent's property" suggests that the transferee must acquire property that once had been owned by the decedent; petitioner's grandmother never owned the future interests that her will created, but she once did own the assets (or their equivalent) that the remaindermen will acquire when their interests become possessory in character. Thus, language in the Regulation implies that the relevant "transfer" had not yet occurred when petitioner renounced his interest in the trust.

Other language, however, indicates that the relevant "transfer" occurs at the time of the testator's death. The word "transfer" is the basic term used in the gift tax provisions to describe *any* passage of property without consideration that may have tax consequences. See 26 U. S. C. §§ 2501, 2511, quoted in nn. 2, 3, *supra*.[13] The Regulation

---

[13] Petitioner does not contend that the creation of an irrevocable trust for the benefit of alternative contingent remaindermen is not a "transfer" when made; if the creation of such a trust is a "transfer" of property within the meaning of the statute, a "transfer" occurred in this case at Margaret Weyerhaeuser Jewett's death. In short, the use of the word "transfer" in Treas. Reg. § 25.2511–1(c) is not indicative of special meaning. To the

describes a transfer that "is effected by the decedent's will" (or by the law of descent and distribution of intestate property), not by a subsequent vesting event or distribution of property. The property must be transferred "from a decedent," not from an estate executor or trust administrator. The lack of any reference in the Regulation to future interests or contingent remainders, and the consistent focus on transfers effected by the decedent by will or through the laws of intestate distribution, undermine the suggestion that the relevant transfer occurs other than at the time of the testator's death. The Regulation also requires "knowledge of the existence of the transfer"; since a person to whom assets have actually been distributed would seldom, if ever, lack knowledge of the existence of such a transfer, it seems more likely that this provision was drafted to protect persons who had no knowledge of the creation of an interest.

On balance, we believe that the text of the Regulation supports the Commissioner's interpretation. Because that text is not entirely clear, however, it is appropriate to examine briefly the Regulation's history.

## III

Treasury Regulation § 25.2511–1(c) has not been changed since it was promulgated on November 15, 1958. The form of the Regulation, however, is somewhat different from a draft that was first proposed on January 3, 1957. That draft required a renunciation to be made "within a reasonable time after knowledge of the existence of the interest," rather than

---

contrary, Congress has specifically indicated that the term "transfer," at least as used in the statutory provisions defining the gift tax, is used "in the broadest and most comprehensive sense." See *supra*, at 309, and nn. 9, 10. It is not surprising that the draftsmen of the Regulation would choose the general term utilized by Congress to describe any passage of property with possible tax consequences.

after knowledge of the existence of the "transfer."[14]   The word "interest" unquestionably would encompass a contingent remainder even if the word "transfer" arguably would not.   Thus, if the initial draft had been adopted without change, petitioner's disclaimers certainly would be subject to tax.   Petitioner contends that the drafting change must have been intended to avoid this consequence.

An assessment of petitioner's argument requires an examination of the reason for the change in the Regulation's language.   The explanation of the change rendered by the Commissioner in 1958 indicates that it was intended to accomplish a purpose quite different from that suggested by petitioner.

A Memorandum from the Commissioner to the Secretary of the Treasury submitted on October 1, 1958, explained that the change in language was intended to capture "the proper distinction" between two early court decisions that the Regulation had attempted to codify.[15]   In both of these cases the

---

[14] The January 3, 1957, draft of the Regulation provided, in part:

"The renunciation of a vested property interest, such as the interest of an heir or next-of-kin, or devisee in whom title immediately vests upon a decedent's death under local law, constitutes a gift to those persons who receive the property interest by means of the renunciation.   On the other hand the renunciation of a gift, bequest, or inheritance, if under local law title does not immediately vest, is not a gift if the renunciation is complete, and is made within a reasonable time after knowledge of the existence of the interest."   22 Fed. Reg. 58 (1957).

[15] The Memorandum is published in Tax Notes, July 27, 1981, p. 204.   In pertinent part, the Memorandum explains:

"In what was intended to be the application of the rules in Brown v. Routzahn (1933) 63 F. 2d 914, cert. denied 290 U. S. 641, and Hardenbergh v. Commissioner (1952) 198 F. 2d 63, cert. denied 344 U. S. 836, it was stated that where title to the property did not vest in the beneficiary or heir immediately upon the decedent's death, the renunciation of the property did not constitute the making of a gift, but that where title vested in the beneficiary or heir immediately upon the decedent's death, the act of the beneficiary or heir in giving up what passed to him from the decedent constituted the making of a gift. . . . Protests on these provisions were received. After reviewing these protests, we have reconsidered our position and now

transferee had renounced a fee interest before the administration of the decedent's estate had been completed.    In the earlier case, *Brown* v. *Routzahn*, 63 F. 2d 914 (CA6 1933), cert. denied, 290 U. S. 641, a husband refused to accept a bequest under his wife's will.    Under Ohio law the disclaimer was effective because it preceded the distribution of his wife's estate.    Since the husband had never acquired ownership of the property, his disclaimer was held not to constitute the transfer of an interest; rather, it was deemed an exercise of a right to refuse a gift of property.    Accordingly, the renunciation was held not be a gift in contemplation of death for purposes of determining the husband's estate tax.    In the second case, *Hardenbergh* v. *Commissioner*, 198 F. 2d 63 (CA8 1952), cert. denied, 344 U. S. 836, the decedent died intestate leaving a wife, a daughter, and a son by a prior marriage.    To effectuate the decedent's intent to equalize the wealth of the three, the wife and daughter relinquished their rights to their intestate shares.    Under Minnesota law, however, "title to an interest in decedent's estate vested in the taxpayers by operation of law which neither had the power to prevent."    198 F. 2d, at 66.    Since local law denied them the power to renounce the interest, the taxpayers' disclaimers were not effective and constituted gifts subject to the federal gift tax.

As indicated in the Commissioner's Memorandum, Treas. Reg. § 25.2511-1(c) sought to preserve the distinction between these two cases.    Originally, the Regulation tracked language in the *Hardenbergh* opinion and provided that a disclaimer was taxable only if title to the property had "vested" under state law.    On consideration, however, the Commissioner recognized that this language did not capture "the

believe that the proper distinction between these two court cases turns on the question of whether under the applicable State law a beneficiary or heir can or cannot refuse to accept ownership of the property which passed from the decedent.    Accordingly, we have revised paragraph (c) of section 25.2511-1 to reflect this change of position."

proper distinction between these two court cases"; indeed, in *Brown* v. *Routzahn,* the property interest had fully "vested" at the time of the taxpayer's renunciation.[16]  Thus, to incorporate the proper distinction, the Commissioner changed the "vesting" requirement to a requirement that "the law governing the administration of the decedent's estate" must give a right to "refuse to accept ownership of property transferred from a decedent."  Having eliminated the "vested property interest" language from the first part of the Regulation, the Commissioner correspondingly changed the second part to read "within a reasonable time after knowledge of the existence of the transfer," rather than "within a reasonable time after knowledge of the existence of the interest."

Thus, the purpose of the change in the Regulation was not to exclude contingent remainders.  Neither *Brown* nor *Hardenbergh* concerned contingent interests.  Since the original draft of the Regulation supports the Commissioner's position in this case, and since the change in its form was made for a reason that is unrelated to the issue presented, the Regulation's history buttresses the Commissioner's position.

Petitioner also contends that the history of the Regulation demonstrates that its draftsmen merely intended to codify the rules of *Brown* v. *Routzahn* and *Hardenbergh* v. *Commissioner,* and that under those cases state law controlled both the "right" to renounce and the "timeliness" of the renunciation.  Although petitioner accurately interprets

----

[16] As the court stated in that case:

"The [taxpayer] was in possession of the estate from 1912 until it was transferred to the trustees in 1920.  It was not, however, in his possession as donee, but as a coexecutor.  Nevertheless, at any time within that period he could have taken the one-third or made a renunciation that would have estopped him from claiming it.  He did neither.  It may be conceded, too, we think, that, had he died at any time between 1912 and the date of the distribution, this property would have passed under a general devise in his will, or, leaving no will, would have passed under the laws of descent and distribution as a part of his estate."  63 F. 2d, at 916.

these two cases, his interpretation of the Regulation would render half of it superfluous. The Regulation explicitly imposes two requirements: (1) the disclaimer must be effective as a matter of local law; and (2) the disclaimer must be made within a reasonable time. If timeliness were governed solely by local law, the second requirement would be redundant. While it is possible that local law may require a disclaimer to be timely to be effective, such a requirement would not absolve the taxpayer from the separate timeliness requirement imposed by the federal Regulation. Otherwise, the Regulation would be complete with a single requirement that the disclaimer be effective under local law.[17]

## IV

Petitioner's remaining arguments may be answered quickly. In the Tax Reform Act of 1976, Congress established specific standards for determining whether a disclaimer constitutes a taxable gift; those new standards would support the Commissioner's position in this case if the original transfers had occurred after the effective date of the Act.[18] Petitioner argues that the legislative decision not to

---

[17] It is possible that the federal timeliness requirement was added in response to the particular facts presented by *Brown* v. *Routzahn*, in which the taxpayer waited eight years to renounce the interest and did so when he was 72 years old. Although the renunciation was timely as a matter of Ohio law, the Treasury Department may well have thought that such delay was unacceptable for federal tax purposes. In practical effect, the 8-year delay made it likely that the renunciation decision was part of the taxpayer's personal estate planning. As explained by the Tax Court in this case:

"While a State court might be willing to accept a renunciation of a nonpossessory and not indefeasibly vested property interest after the passage of considerable time, so long as the interests of third parties have not been harmed, the passage of time is crucial to the scheme of the gift tax. With time, the potential recipient can wait to see if he himself needs the property, or whether he had better let it pass directly to the next generation." 70 T. C., at 437.

[18] See Tax Reform Act of 1976, Pub. L. 94–455, 90 Stat. 1893, § 2009(b), 26 U. S. C. § 2518(b).

apply those standards retroactively is evidence that a different rule was previously effective. It is clear, however, that Congress expressed no opinion on the proper interpretation of the Regulation at issue in this case; it merely established an unambiguous rule that should apply in the future.[19]

Petitioner also argues that it is unfair to apply the 1958 Regulation "retroactively" to an interest that had been created previously; petitioner asserts that, by the time the Regulation was adopted, it was already too late—according to the Commissioner's view—to disclaim the interest.[20] The argument lacks merit. It is based on an assumption that petitioner had a "right" to renounce the interest without tax consequences that was "taken away" by the 1958 Regulation. Petitioner never had such a right. Indeed, petitioner does not argue that taxation of the disclaimers is inconsistent with the statutory provisions imposing a gift tax, which were enacted long before petitioner's interest in the trust was created. The 1958 Regulation was adopted well in advance of the disclaimers in this case; we see no "retroactivity" problem.

Finally, petitioner argues that the disclaimer of a contingent remainder is not a taxable event by analogizing it to an

---

[19] After noting the decision in *Keinath* v. *Commissioner*, 480 F. 2d 57 (CA8 1973), and the "reasonable" time requirement of the Regulation, the House Report states that Congress

"believe[d] that definitive rules concerning disclaimers should be provided for estate and gift tax purposes to achieve uniform treatment. In addition, [Congress] believe[d] that a uniform standard should be provided for determining the time within which a disclaimer must be made." H. R. Rep. No. 94–1380, pp. 66–67 (1976).

Nothing in the legislative history expresses an opinion on the proper interpretation of the previously controlling Regulation. Nor is such an opinion indicated by the mere enactment of the law; Congress may seek to clarify the future without affecting the past. Cf. *Knetsch* v. *United States*, 364 U. S. 361, 367–370.

[20] Petitioner's argument would have more appeal had he attempted to renounce the interest immediately after the adoption of the 1958 Regulation, rather than some 14 years later.

exercise of a special power of appointment, which generally is not considered a taxable transfer. 26 U. S. C. § 2514. As the Commissioner notes in response, however, a disclaimant's control over property more closely resembles a *general* power of appointment, the exercise of which is a taxable transfer. *Ibid.* Unlike the holder of a special power—but like the holder of a general power—a disclaimant may decide to retain the interest himself. It is this characteristic of the control exercised by a disclaimant that makes a disclaimer a "transfer" within the scope of the gift tax provisions.

## V

The Commissioner's interpretation of the Regulation has been consistent over the years and is entitled to respect. This canon of construction, which generally applies to the Commissioner's interpretation of the Internal Revenue Code, see *Commissioner* v. *Portland Cement Co. of Utah*, 450 U. S. 156, 169, is even more forceful when applied to the Commissioner's interpretation of his own Regulation.

Since the relevant "transfer" in this case occurred when petitioner's grandmother irrevocably transferred her assets to a testamentary trust, petitioner's disclaimers of the rights created by that trust were not made within a reasonable time. Even accepting petitioner's argument that the clock did not begin to run until he reached the age of majority, the disclaimers were made after the passage of 24 years. As the Tax Court explained:

> "The petitioner possessed, for 24 years, the effective right to determine who should ultimately receive the benefits of a 50-percent remainder interest of a trust which, in 1972, had a corpus of approximately $8 million. He waited to act in respect of that remainder interest until the surviving life beneficiary was over 70 years of age and until he himself was 45 and, it appears, a man of

substantial means.   In 1972, by the execution of two disclaimers, he elected to let the property pass according to the alternative provisions of his grandmother's will—to the natural objects of his bounty.   This, we hold, was an exercise of control over the disposition of property subject to the gift tax imposed by section 2501."   70 T. C. 430, 438 (1978) (footnote omitted).

We agree.   The Commissioner's assessment of a tax was proper, both under the statute and the Regulation.

The judgment of the Court of Appeals is affirmed.

*It is so ordered.*

JUSTICE BLACKMUN, with whom JUSTICE REHNQUIST and JUSTICE O'CONNOR join, dissenting.

I do not find this case as easy or as clear on behalf of the Government as a reading of the Court's opinion would lead one to believe.   While the issue could be described as somewhat close, I conclude that the petitioners have much the better of the argument, and I would reverse the judgment of the Court of Appeals.

I

Margaret Weyerhaeuser Jewett, grandmother of petitioner George F. Jewett, Jr., died testate on January 14, 1939.   At her death she was a resident of Massachusetts. She left a will which was duly admitted to probate in that Commonwealth.

By her will the decedent created a trust for the benefit of her husband, James R. Jewett, during his lifetime, and thereafter for the benefit of her son, George F. Jewett, and his wife, Mary, for their respective lives.   On the death of the survivor of the three life beneficiaries, the trust estate is to be distributed to the then living children of George F. Jewett and to the then living issue of any deceased child of George F. Jewett, in equal shares by right of representation.

Petitioner George F. Jewett, Jr., was born April 10, 1927; he thus was not yet 12 years old when his grandmother died. The testatrix' husband, James, and her son, George, died prior to 1972. Mary is still living; she was born March 7, 1901.

On August 30, 1972, petitioner [1] executed an instrument disclaiming and renouncing the major portion of any right to receive any remainder of the trust estate upon the death of his mother. On December 14 of that year, petitioner executed a second instrument disclaiming and renouncing the remaining portion of any such right. It is undisputed that these 1972 disclaimers were valid, timely, and effective under the applicable Massachusetts law.

Petitioner George F. Jewett, Jr., and his wife, petitioner Lucille M. Jewett, filed federal gift tax returns for the calendar quarters ended September 30 and December 31, 1972, respectively. Those returns notified respondent Commissioner of the disclaimers but did not acknowledge them as taxable transfers for federal gift tax purposes. [2]

On audit, the Commissioner determined that the disclaimers were *not* "made within a reasonable time after knowledge of the existence of the transfer," within the meaning of Treas. Reg. § 25.2511–1(c), 26 CFR § 25.2511–1(c) (1981), and thus were transfers subject to federal gift tax under §§ 2501(a)(1) and 2511(a) of the Internal Revenue Code of 1954, as amended, 26 U. S. C. §§ 2501(a)(1) and 2511(a). Deficiencies of approximately $750,000 were determined.

Petitioners sought redetermination of the deficiencies in the United States Tax Court. That court, in a reviewed decision, ruled in favor of the Commissioner. 70 T. C. 430 (1978). In so doing, the court followed its earlier ruling in

---

[1] For convenience, any reference made herein to "petitioner" in the singular, refers to George F. Jewett, Jr., alone.

[2] Petitioners, as they were entitled to do under § 2513 of the Internal Revenue Code of 1954, 26 U. S. C. § 2513, elected to treat any gift made by either as made equally by both.

*Keinath* v. *Commissioner*, 58 T. C. 352 (1972), an unreviewed decision that had been *reversed*, 480 F. 2d 57 (1973), by a unanimous panel of the United States Court of Appeals for the Eighth Circuit five years before. In the present case, a panel of the Ninth Circuit, by a divided vote, *affirmed* the Tax Court. 638 F. 2d 93 (1980). Because of the conflict, so created, between judgments of two Courts of Appeals, the case is here.

## II

As the Court observes, *ante*, at 311, the language of the Regulation provides support for the petitioners as well as for the Commissioner. The Court also acknowledges that the Regulation has language that "implies that the relevant 'transfer' had not yet occurred when petitioner renounced his interest in the trust." *Ibid.* The Court, however, opts for the Commissioner's opposing interpretation. I am persuaded otherwise.

To be sure, certain factors lend colorable support to the Commissioner's position: (a) Although petitioner was not yet 12 years old when the testatrix died, he attained the age of 21 in 1948, 24 years before he executed the disclaimers in 1972. (b) Sections 2501(a)(1) and 2511(a) of the Code are broad and sweeping and were intended to reach every "transfer of property by gift," whether in trust or otherwise, and whether direct or indirect. (c) And to accept petitioners' position could mean, as a practical matter, that one who is a beneficiary of a trust, such as this testatrix created, may stand aside for a long period before disclaiming and thus, in a sense, may make that disclaimer a part of his own estate planning when actual possessory enjoyment of the property is nearer at hand and its desirability or a need for it is better evaluated than many years before.

The other side of the controversy, however, is not without substantial support. The federal gift tax does not deal with abstractions. It is concerned with "the transfer of property by gift." 26 U. S. C. § 2501(a)(1). With the development of

testamentary trusts—or, for that matter, of *inter vivos* trusts—legally recognized "interests" of various kinds, possessory and anticipatory, can be created by the trustor. The beneficiary of a contingent remainder or, as the Court seems to suggest here, *ante*, at 308, n. 5, of "a vested remainder subject to divestiture," however, may never realize anything by way of actual enjoyment of income or corpus. The contingencies upon which enjoyment depends may never ripen. In particular, the contingent beneficiary may die while the life beneficiary still lives.

These possibilities, accompanied by the monetary impact of gift and death taxes led courts and legislative bodies to recognize or develop common-law disclaimer and to enact preventive statutory provisions. Indeed, the Commissioner here, in the Regulation at issue, § 25.2511–1(c), recognizes a right to refuse, free of gift tax, acceptance of "ownership of property transferred from a decedent," provided that the right to refuse is effective under local law and the refusal is "made within a reasonable time after knowledge of the existence of the transfer." It is accepted that the disclaimers in the present case were effective under Massachusetts law. I search the statute in vain, however, for any statutory mention of, or provision for, the reasonable-time requirement. One might say, therefore, that the Commissioner in his wisdom acted as a matter of grace to relieve, upon the conditions specified, what could be difficult and potentially unfair and financially disastrous tax situations.

Be that as it may, I regard any "transfer" here, not as one from George F. Jewett, Jr. (the necessary predicate of the Commissioner's determination), but as a transfer from the testatrix. She is the one from whom the largess flows. Petitioner, of course, was in the line of designated beneficiaries, but he stepped from that line through the acts of disclaimer, and the transfer will pass him by.

There are other practical considerations that have appeal for me:

1. Accepting the Commissioner's Regulation and its "reasonable time" requirement, it seems to me that that time is to be measured, not from the death of the testatrix in 1939, but from the death of the preceding life beneficiary. That life beneficiary, petitioner's mother, is still alive. Petitioner has realized no benefit from the trust and never will have any benefit if he predeceases his mother. It is the contingency event that is important and makes sense in the consideration of any disclaimer.

2. A disclaimer is fundamentally different from a voluntary transfer of property. A disclaimer is a refusal to accept property *ab initio*. *Bel* v. *United States*, 452 F. 2d 683, 693 (CA5 1971), cert. denied, 406 U. S. 919 (1972); see Black's Law Dictionary 417 (5th ed. 1979). The law of disclaimer is founded on the basic property-law concepts that a transfer is not complete until its acceptance by the recipient, and that no person can be forced to accept property against his will. A transferor chooses the recipients of the transferred property; a disclaimant makes no such selection, for that selection has been made by the trustor. Petitioner's disclaimers merely renounced any future right to receive corpus of the trust; they did not direct or even purport to direct the future distribution of that corpus.

3. Until the Ninth Circuit, by its divided vote, decided the present case, the only Court of Appeals authority on the issue was *Keinath* v. *Commissioner, supra.* For reasons best known to him, the Commissioner did not seek certiorari in that case and the decision stood unmolested by any opposing appellate court authority for over seven years. Indeed, it was expressly reaffirmed by the Eighth Circuit sitting en banc in *Cottrell* v. *Commissioner*, 628 F. 2d 1127 (1980), a case decided just a few weeks before the Ninth Circuit decision.[3] In the interim, a substantial period as the tax law

---

[3] In *Cottrell*, three judges dissented because they felt that, in contrast with the factual situation in *Keinath*, the *Cottrell* taxpayer had "extensive" and "ultimate" control through a general testamentary power of appoint-

goes, taxpayers and their advisers have properly assumed that a disclaimer, valid under state law, was valid for federal tax purposes as well if it were timely made. Judge Harris, dissenting below, observed that "it is particularly important in matters of taxation that established precedent be followed." 638 F. 2d, at 96. He went on to say that if the case were one of first impression, he "might well join with the majority" but "[n]umerous tax practitioners have undoubtedly relied on this [the *Keinath*] opinion in advising as to the tax consequences of such acts as are involved in the instant case, and justifiably so." *Ibid.* I agree that stability in tax law is desirable. Except for the Tax Court, the pronounced law appeared to have achieved a level of stability after *Keinath.*

4. The Eighth Circuit's analysis of the legal issue, it seems to me, is sound. In *Keinath* the court stressed that the remainder beneficiary "at no time accepted any income or principal from the trust," 480 F. 2d, at 59, and that within eight weeks of the death of the testator's widow-life beneficiary, the remainderman executed his disclaimer. It was established that the disclaimer was valid and timely under applicable state law and that as a result thereof the trust estate passed to the disclaimant's children. The court noted that "reasonable time," as that term is used in the Regulation, is not defined either in the Code or the Regulation. The basic common-law requirements that the disclaimer must be made within a reasonable time and that it be effective under local law "are but a codification of common law principles applicable to the doctrine of disclaimers." *Id.*, at 61. A central

---

ment. They would modify the *Keinath* approach "where the remainderman essentially controls the events which would cause divestiture of the interest." They agreed, however, with the "general rule as applied to the facts of *Keinath*," where an interest is "less than an indefeasibly vested remainder." 628 F. 2d, at 1132–1133.

It is of interest to note that the court in *Cottrell* observed: "The Commissioner has not asked us to overrule *Keinath*, and we are not inclined to do so on our own motion." *Id.*, at 1131.

factor is the interpretation of the word "transfer" in the Regulation. The remainderman "had really nothing to accept or renounce by way of beneficial ownership or control of the property until he succeeded in outliving the life beneficiary." *Id.*, at 64. The court then held that, under the prevailing common law, the holder of a vested remainder interest subjected to divestiture has a reasonable time within which to disclaim after the death of the life beneficiary. *Ibid.* It distinguished *Fuller* v. *Commissioner*, 37 T. C. 147 (1961), upon which the Tax Court had relied, and did so on the factual grounds mentioned below.

In *Cottrell*, the Eighth Circuit, sitting en banc, adhered to its *Keinath* analysis. It felt the case was "indistinguishable in any material respect from *Keinath*." 628 F. 2d, at 1128. It was undisputed that the disclaimer in question was valid under state law, that it was unequivocal, and that the taxpayer accepted no property before she disclaimed. As in *Keinath*, if the "reasonable time" period began with the death of the testator, the disclaimer was untimely, but if the critical event was the death of the life beneficiary, the disclaimer "was unquestionably timely, having been executed 16 days, and filed two months, thereafter." 628 F. 2d, at 1129. There is nothing unfair or improper in allowing the remainderman to wait until the life beneficiary's death and then decide whether to accept the bequest.

What the Eighth Circuit said by way of analysis, and held, in *Keinath* and *Cottrell*, when applied to the facts before us, is persuasive and should control here. The Ninth Circuit majority, without any particular analysis, merely disagreed with the *Keinath* and *Cottrell* reasoning and held, in a conclusory statement, that the "'transfer' as used in the regulation means the transfer to the disclaimant of the property interest disclaimed by him," and that the transfer in question took place in 1939 when Mrs. Jewett died and petitioner received a contingent remainder from her estate. 638 F. 2d, at 96.

5. The Court notes, *ante*, at 316, that by the Tax Reform Act of 1976, Pub. L. 94–455, § 2009(b)(1), 26 U. S. C. § 2518, Congress now has imposed a uniform tax treatment of disclaimers, independent of state law. Section 2518, as so added to the Code, however, was specifically made prospective only, that is, it was made applicable only to transfers creating an interest after 1976. Pub. L. 94–455, § 2009(e)(2), 90 Stat. 1896. It thus has no application to the present case.

The Court declares, *ante*, at 317: "Congress expressed no opinion on the proper interpretation of the Regulation at issue in this case," but merely established an unambiguous rule for the future. That conclusion is not at all clear to me. Congress was aware of the *Keinath* decision. See H. R. Rep. No. 94–1380, p. 66, and n. 4 (1976). The House Committee on Ways and Means observed:

> "The amendments apply with respect to transfers creating an interest in the person disclaiming made after December 31, 1976. In the case of transfers made before January 1, 1977, the rules relating to transfers under present law, including the period within which a disclaimer must be made, are to continue to apply to disclaimers made after December 31, 1976." *Id.*, at 67–68.

For me, this is an acknowledgment that the *Keinath* ruling represented what the law was prior to 1977, and what it still is for trust instruments effective before that calendar year. I cannot join the Court's flat statement that "Congress expressed no opinion" on the existing law.

6. To be sure, the Tax Court has persisted in its contrary rulings. Those rulings, I feel, rest on an insecure base. The original case, from which all the other Tax Court decisions have flowed, was *Fuller* v. *Commissioner*, 37 T. C. 147 (1961), a reviewed case. In *Fuller*, the life beneficiary of five-eighths of the income of her husband's testamentary trust received that income for many years before she renounced a portion of her five-eighths share. Thus, she real-

ized actual enjoyment for a long period before she disclaimed. This, for me, is a vital fact that distinguishes the case from *Keinath*, *Cottrell*, and *Jewett*, where each disclaimant enjoyed no benefit whatsoever. Mrs. Fuller had accepted her gift before renouncing it.

The next Tax Court case was *Keinath v. Commissioner*, 58 T. C. 352 (1972). The judge who decided *Keinath* relied on *Fuller* as controlling precedent. He acknowledged Mrs. Fuller's receipt of income from the trust "for over 25 years," conceded that the Fuller facts "are admittedly different," but nevertheless ruled that "this distinction is immaterial." 58 T. C., at 358. He did not read *Fuller* "as resting upon Mrs. Fuller's acceptance of income from the trust but upon her acceptance of her interest in the trust." 58 T. C., at 358.

The next pertinent Tax Court decision was that in the present case.[4] 70 T. C. 430 (1978). There the court, in a reviewed decision, referred to, and relied upon, its own decision in *Keinath* which had been reversed by the Eighth Circuit. "We think that our decision in *Keinath* was correct and that it controls the decision in this case." 70 T. C., at 435.

The last Tax Court cases are *Estate of Halbach v. Commissioner*, 71 T. C. 141 (1978), and *Cottrell v. Commissioner*, 72 T. C. 489 (1979). The former was a federal estate tax case centering on 26 U. S. C. § 2035 (disclaimer within three years of death). The latter, concerning a sister of the *Halbach* decedent, related to federal gift tax. Neither was a reviewed decision. The judge in *Cottrell*, recognizing that that case was appealable only to the Eighth Circuit, avoided the Court of Appeals decision in *Keinath* by distinguishing it on grounds later found unacceptable by the Eighth Circuit majority when the Tax Court decision was reversed.

---

[4] See, however, *Estate of Rolin v. Commissioner*, 68 T. C. 919, 927 (1977), aff'd, 588 F. 2d 368 (CA2 1978).

Such is the saga of the issue in the United States Tax Court. The cases build on one another, but the origin and base is *Fuller*. That original case, in my view, is clearly distinguishable on its facts and thus, indeed, is "a frail reed on which to lean."

7. The Court's and the Commissioner's position also seems to me to embrace a distinct element of unfairness. The Commissioner stresses repeatedly the number of years that elapsed between the death of the testatrix and the execution of the disclaimers. This same element has been stressed in others of these cases. But to require the disclaimer long before the interest could ripen into enjoyment means that the decision must be made at a time when the disclaimant does not know what he is disclaiming or whether he ever would receive and enjoy any interest. This concern is compatible with the wording of the applicable Regulation which speaks of "knowledge of the existence of the transfer." The Eighth Circuit recognized this element of unfairness in *Cottrell*. 628 F. 2d, at 1131.

For all these reasons, I would reverse the judgment of the Court of Appeals. I therefore respectfully dissent.