ESTATE OF George W. BUNN, Jr., Deceased, Springfield Marine Bank, Executor

v.

The UNITED STATES. (Two cases).

Melinda J. BUNN

v.

The UNITED STATES. (Two cases).

Nos. 313–81T, 314–81T, 110–83T and 111–83T.

United States Claims Court.

Oct. 25, 1983.

and fast rule, but is a determination based upon

James L. Malone, Chicago, Ill., for plaintiffs. Eillen B. Trost, Carleen S. Davis and McDermott, Will & Emery, Chicago, Ill., of counsel.

Mary M. Abate, Washington, D.C., with whom was Asst. Atty. Gen. Glenn L. Archer, Jr., Washington, D.C., for defendant. Theodore D. Peyser Jr., Washington, D.C., of counsel.

OPINION

ON CROSS–MOTIONS FOR SUMMARY JUDGEMENT

PHILIP R. MILLER, Judge:

The disputed issue in these cases is whether George W. Bunn, Jr. (the taxpayer) made a taxable gift in 1973, when, after having received the income of a trust during its 20-year term, he relinquished his right to receive the corpus in favor of his children. It is decided herein that he did.

*Facts*

The will of Alice E. Bunn, who died on April 8, 1953, provided for a trust which, *inter alia,* was to pay half of its income to George W. Bunn, Jr., for its 20-year term. At the end of the term the half of the corpus which was the source of the income was to be turned over to him, if living, or to his children, if deceased. The taxpayer regularly received such income over the entire 20 years. On April 9, 1973, one day after the trust terminated, the taxpayer dis-

the facts and circumstances of each case."

claimed his interest in the corpus, and, as a result, the assets, valued at $2,533,151, passed to his children.

Thereupon, the taxpayer and his wife, Melinda, filed a gift tax return for the second quarter of 1973, in which they advised the Internal Revenue Service of George's disclaimer, but did not treat it as a taxable gift.[1] However, the I.R.S. disagreed and assessed an aggregate of $850,-313 in gift taxes and interest against both of them. George Bunn having died in October 1973, in 1977 his estate paid his share of the deficiency and interest, and his wife paid the remainder. After denial of their claims for refund they brought timely suits for refund of their 1973 gift taxes. Subsequently, Melinda brought suit for refund of gift tax deficiencies she had paid for 1975 and 1976 resulting from the disallowance of exclusions, exemptions and deductions, because they had been used up in connection with the computations of her 1973 deficiency. In addition George's estate brought suit for refund of estate tax on the theory that his taxable estate should be reduced by his additional gift tax liability and attorneys' fees. All of these cases were consolidated.

### Discussion

While under the standards of I.R.C. § 2518[2] a disclaimer of the right to receive property in favor of another, such as that described above, is explicitly subject to gift tax, that section was not enacted until 1976,[3] and the legislative history indicates that no inference may be drawn from the enactment as to the prior law.[4] Hence we must look to the more general provisions of the Code and the authorized regulations thereunder. The statute levies the gift tax on every "transfer of property by gift * * * by any individual" (I.R.C. § 2501–(a)(1)), "whether the gift is direct or indirect, and whether the property is real or personal, tangible or intangible" (I.R.C. § 2511(a)). While this would seem broad enough to cover the disclaimer, the Commissioner of Internal Revenue, as authorized by law (I.R.C. § 7805(a)), beginning in 1958, chose to deal with the problem more explicitly by regulations. Treasury Regulations on Gift Tax (1954 Code) (26 C.F.R., 1973 Rev.), as in effect during the year at issue, provides:

§ 25.2511–1 Transfers in general.

\* \* \* \* \* \*

(c) The gift tax also applies to gifts indirectly made. Thus, all transactions whereby property or property rights or interests are gratuitously passed or conferred upon another, regardless of the means or device employed, constitute gifts subject to tax. See further § 25.-2512–8. Where the law governing the administration of the decedent's estate gives a beneficiary, heir, or next-of-kin a right to completely and unqualifiedly refuse to accept ownership of property transferred from a decedent (whether the transfer is effected by the decedent's will or by the law of descent and distribution of intestate property), a refusal to accept ownership does not constitute the making of a gift if the refusal is made within a reasonable time after knowledge of the existence of the transfer. The refusal must be unequivocable and effective under the local law. There can be no refusal of ownership of property after its acceptance. Where the local law does not permit such refusal, any disposition by the beneficiary, heir, or next-of-kin whereby ownership is transferred gratui-

---

1. In the return, for gift tax purposes, the wife consented to have any gift made by the husband to be treated as made by both. (*See* § 2513(a) of the Internal Revenue Code of 1954.) The return also stated that it was made merely for information purposes and to start the running of the statutory limitations period against deficiency assessment.

2. All reference to the I.R.C. are to the Internal Revenue Code of 1954 (26 U.S.C.) and, unless otherwise stated, as amended to and in effect in 1973.

3. The Tax Reform Act of 1976, Pub.L. 94–455, 90 Stat. 1893 § 2009(b).

4. *See Jewett v. Commissioner,* 455 U.S. 305, 316–17, 102 S.Ct. 1082, 1090, 71 L.Ed.2d 170 (1982).

tously to another constitutes the making of a gift by the beneficiary, heir, or next-of-kin. * * * In the absence of facts to the contrary, if a person fails to refuse to accept a transfer to him of ownership of a decedent's property within a reasonable time after learning of the existence of the transfer, he will be presumed to have accepted the property. * * *

The difference between the parties is this: Plaintiff contends that the transfer to which the regulation refers, in the clauses giving the beneficiary a "reasonable time after knowledge of the existence of the transfer" and a "reasonable time after learning of the existence of the transfer", to refuse to accept ownership of the property free of gift tax liability, does not take place until the interest becomes possessory; whereas defendant maintains that it takes place at the earlier date, when the contingent future interest is created. Plaintiff concedes that if the transfer here took place when the interest was created, *i.e.,* in 1953, the disclaimer in 1973, 20 years later, was not made within a reasonable time after George Bunn first learned of the transfer.

Unfortunately for plaintiff, the precise issue was decided in favor of the government in *Jewett v. Commissioner,* 455 U.S. 305, 102 S.Ct. 1082, 71 L.Ed.2d 170 (1982). Although plaintiff concedes that to be so, plaintiff asks this court to disregard that decision as *stare decisis* because "Legally incorrect and misleading statements were made on a material point by government counsel during oral argument before the Supreme Court." Plaintiff claims that government counsel had misinformed the Supreme Court that the Commissioner had consistently followed his position that the relevant transfer occurs when the interest is created, when, in fact, the Service had issued inconsistent private letter rulings to taxpayers indicating its view that the trans-

fer takes place when the interest becomes possessory or vested, and that the Supreme Court would have ruled to the contrary of its position had it known the true facts.

For a variety of reasons, plaintiffs' argument must be rejected as frivolous:

■ First, this court is not empowered to disregard the authority of a Supreme Court decision, no matter how persuasive is the argument that it erred. The Supreme Court has recently had two occasions to remind us of this in *per curiam* opinions: "[U]nless we wish anarchy to prevail within the federal judicial system, a precedent of this Court must be followed by the lower federal courts no matter how misguided the judges of those courts may think it to be." (*Hutto v. Davis,* 454 U.S. 370, 375, 102 S.Ct. 703, 706, 70 L.Ed.2d 556 (1982)); and "Needless to say, only this Court may overrule one of its precedents" (*Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd.,* —— U.S. ——, 103 S.Ct. 1343, 1344, 75 L.Ed.2d 260 (1983)). And *see also Jaffree v. Wallace,* 705 F.2d 1526, 1532–33 (11th Cir.1983) and *Stell v. Savannah-Chatham County Bd. of Ed.,* 333 F.2d 55, 61 (5th Cir.), *cert. denied,* 379 U.S. 933, 85 S.Ct. 332, 13 L.Ed.2d 344 (1964).

Second, the notion that the *Jewett* decision turned entirely upon the Supreme Court's acceptance of a finding that the Commissioner's interpretation of the Treasury Regulation had been followed consistently by him over the years and, that, absent such finding, the decision would have gone the other way is not reasonable. The Supreme Court's statement on the subject is only the last of ten reasons which the court gave for its decision and occupies only seven lines in a 13 page opinion.[5]

Third, the statement that the Commissioner's interpretation of the regulation had been followed consistently by him was not

---

5. The Court stated (*Jewett,* 455 U.S. at 318, 102 S.Ct. at 1090):

The Commissioner's interpretation of the Regulation has been consistent over the years and is entitled to respect. This canon of construction, which generally applies to the Commissioner's interpretation of the In-

ternal Revenue Code, see *Commissioner v. Portland Cement Co. of Utah,* 450 U.S. 156,. 169 [101 S.Ct. 1037, 1045, 67 L.Ed.2d 140] is even more forceful when applied to the Commissioner's interpretation of his own Regulation.

the product of a misrepresentation foisted upon the Supreme Court by government counsel in oral argument. The Court did not state that the source of its statement was merely government counsel's response to its question in oral argument. A transcript of such argument (reproduced in plaintiffs' brief) shows that Jewett's counsel likewise conceded that the Commissioner's interpretation of the regulation had been consistent. Moreover, the litigated cases since the adoption of the regulation show that in fact the Commissioner had followed his interpretation of it consistently. *Fuller v. Commissioner,* 37 T.C. 147 (1961); *Keinath v. Commissioner,* 58 T.C. 352, 358–59 (1972), *rev'd,* 480 F.2d 57 (8th Cir.1973); *Estate of Halbach v. Commissioner,* 71 T.C. 141, 146 (1978); *Cottrell v. Commissioner,* 72 T.C. 489 (1979), *rev'd,* 628 F.2d 1127 (8th Cir.1980); and *see also Estate of Hoenig v. Commissioner,* 66 T.C. 471, 477 (1976).

Fourth, plaintiffs' reference to three private (unpublished) letter rulings issued to taxpayers to show the alleged inconsistent practice does not reflect the inconsistency in the Commissioner's position which plaintiffs claim. Private Ruling 6612201590A, issued December 20, 1966, merely held that, despite the fact that a trust was set up in 1935, the taxpayer's proposal to disclaim her interest in September 1966 was still within a reasonable time after she acquired knowledge of it because a state court decision which first construed the trust instrument to give her a contingent interest did not become final until June 1966.

In Private Ruling 7302140070A, issued February 14, 1973, the proposed renunciation of an income interest in a testamentary trust was to take place within 12 months of the decedent's death. The Ruling merely deferred to the district director's determination of the factual question of whether or not the 12-month period was within a reasonable time after the settlor's death. In Private Ruling 7307190100A, issued July 19, 1973, the proposed renunciation of an interest in an estate was to take place within 90 days of the qualification of the executor of the estate. Again the Service indicated that what was a reasonable period of time for such renunciation was a factual question for the district director to resolve. Since the beneficiary's interest in each instance was deemed to have been transferred at the testator's death, neither of these rulings is inconsistent with the Commissioner's position in *Jewett,* where he also contended that the relevant transfer occurred when the settlor of the testamentary trust, the taxpayer's grandmother, died.

■ Finally, even if *Jewett* had gone the other way, it is unlikely that it would have helped plaintiffs here. Justice Blackmun, who dissented (together with Justices Rehnquist and O'Connor), asserted that the difference between a disclaimer and a voluntary transfer was that the former involved a refusal to accept property *ab initio,* while the latter necessitated acceptance of the property prior to transfer. His conclusion that *Jewett* disclaimed rather than transferred the property interest was based on the facts that the life beneficiary of the trust, Jewett's mother, was still alive and that Jewett "has realized no benefit if he predeceases his mother", coupled with the reasoning that "It is the contingency event that is important and makes sense in the consideration of any disclaimer." (*Jewett, supra,* 455 U.S. at 323, 102 S.Ct. at 1093.) In the instant case, George W. Bunn, Jr., received the income from the trust property for 20 years before repudiating his interest in it and did not disclaim his interest until one day after the trust terminated and he was absolutely entitled to the corpus.

Accordingly, defendant is entitled to summary judgment dismissing the complaints in case Nos. 313–81T, 314–81T and 111–83T, which claim refunds of gift taxes and interest. However, defendant concedes that such taxes and interest, as well as reasonable attorney's fees are deductible from the gross estate of George W. Bunn, Jr., pursuant to I.R.C. § 2053, although the total amount has not yet been ascertained. Therefore, plaintiff is entitled to judgment that defendant is liable on the claim in No. 110–83T for refund of estate taxes, with

the amount to be determined in further proceedings under Rule 56(d).

Proceedings are suspended for 60 days to allow the parties to stipulate to the amount of the judgment to be entered in No. 110–83T. If they are unable to so stipulate, either party may so advise the court by motion requesting further proceedings and specifying the nature of such proceedings.