**Justin J. and Margaret M. BONANNO, Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**No. 267–84T.**

United States Claims Court.

Aug. 13, 1987.

---

Allan I. Mendelsohn, Washington, D.C., with whom was Marvin L. Symkowicz, Washington, D.C., for plaintiffs. Dwight A. McKabney, Miami, Fla., of counsel.

Mary M. Abate, with whom was Asst. Atty. Gen., Roger M. Olsen, Washington, D.C., for defendant.

### OPINION

SMITH, Chief Judge.

Plaintiffs originally filed suit for a tax refund with this court on October 14, 1986. This court then suspended proceedings on this case pending the ultimate disposition of *Coplin v. United States* and ordered all further adjudications on this claim to be bound by *Coplin's* relevant rulings. *See generally O'Connor v. United States,* — U.S. —, 107 S.Ct. 347, 93 L.Ed.2d 206 (1986), *aff'g, Coplin v. United States,* 761 F.2d 688 (Fed.Cir.1985), *rev'g,* 6 Cl.Ct. 115 (1984). With the ultimate decision in *Coplin* having already been made, the suspension was automatically lifted and plaintiffs filed a Motion For Further Proceedings. On the basis of *O'Connor v. United States,* this court is compelled to deny plaintiffs' Motion For Further Proceedings and will accordingly dismiss plaintiffs' complaint.

### Facts

Justin J. Bonanno [1], is a United States citizen who was employed in Panama by the United States Canal Commission (the "Commission"). Plaintiffs' complaint concerns the taxability of Mr. Bonanno's wages earned while he was working for the Commission during the tax years of 1979 through 1985. Although plaintiffs paid taxes on these wages, they later filed a timely claim with the I.R.S. for refund. They contended that his wages derived from the Commission were not taxable as income because of the Panama Canal Treaty, Sept. 7, 1977, United States-Panama, T.I.A.S. No. 10030. Defendant disallowed plaintiffs' claim and plaintiffs come now before this court requesting relief.

---

**1.** Margaret M. Bonanno is named as plaintiff because she signed a joint income tax return with her husband.

## Discussion

### I. Interpretation of Article XV(2) of Article III

The central focus of plaintiffs' claim is based upon Article XV(2) of Article III of the Panama Canal Treaty, Sept. 7, 1977, United States-Panama, T.I.A.S. No. 10031 [hereinafter Article XV(2) ], which states as follows:

> United States citizen employees and dependents shall be exempt from any taxes, fees, or other charges on income received as a result of their work for the Commission. Similarly, they shall be exempt from payment of taxes, fees, or other charges on income derived from sources outside of the Republic of Panama.

Plaintiffs contend that this treaty provision exempts United States citizens from United States and Panamanian taxation on their wages earned at the Panama Canal Commission. Defendant agrees that this treaty provision provides an exemption from Panamanian taxes but contends that it provides no similar exemption from United States taxes.

Although plaintiffs' argument seems plausible from a plain reading of Article XV(2), plaintiffs' argument cannot stand because it runs afoul of the Supreme Court's interpretation of the provision rendered in *O'Connor v. United States. See generally* —— U.S. at ——, 107 S.Ct. at 347. In that case, the Court upheld defendant's present position that Article XV(2) exempts wages of United States citizens employed at the Commission only from Panamanian taxes, not from United States taxes.

Plaintiffs do not dispute the existence of the *O'Connor* holding but instead urge this court to open proceedings anew on the interpretation of Article XV(2) because of some newly found evidence. This new evidence includes: State Department comments on a draft of Article XV(2); an earlier draft of Article XVI(2) of Article IV; affidavits by Dr. Royo, former President of the Republic of Panama and second ranking negotiator during the treaty's negotiations; and a statement by Dr. Royo which was previously held by the government and was subsequently declassified by Richard R. Wyrough on May 15, 1986.

Despite this new material, plaintiffs' interpretation still cannot be asserted before this court because of the well recognized doctrine of stare decisis. This doctrine, which promotes predictability and coherence in the law, *Olson v. Paine,* 806 F.2d 731, 741 (7th Cir.1986); 20 Am.Jur.2d § 184 (1965), requires a court to follow previous decisions by the same or higher courts even though different parties are involved. 20 Am.Jur. § 183. The previous decisions which are binding precedent under stare decisis, of course, do not include findings of fact but only determinations of law. 20 Am.Jur. § 190; *see L.E. Myers Co. v. United States,* 10 Cl.Ct. 617, 619 (1986). It is axiomatic that this court cannot disregard the Supreme Court's legal decisions even if it is persuaded that the Supreme Court was in error. *E.g., Jaffree v. Board of School Commissioners,* 459 U.S. 1314, 1315, 103 S.Ct. 842, 842, 74 L.Ed.2d 924 (1983); *Estate of Bunn v. United States,* 3 Cl.Ct. 547, 549 (1983). *But cf. In re Korman,* 449 F.2d 32, 39 (7th Cir.1971) (per curiam) (An appellate court can disregard a Supreme Court decision if it is convinced that it has been undermined or repudiated by later decisions of the Court), *rev'd without opinion,* 406 U.S. 952, 92 S.Ct. 2055, 32 L.Ed.2d 340 (1972).

Plaintiffs concede that their interpretation of Article XV(2) cannot stand if stare decisis applies. Plaintiffs instead argue that treaty interpretation is governed by the same principles that apply in domestic contract law. Therefore, stare decisis would not apply because contract interpretation is a question of fact and not a question of law. A. Corbin, Corbin on Contracts § 554, at 522 (1952); E. Farnsworth, Contracts § 7.14 at 515 (1982).

It is true that treaty interpretation is similar to contract interpretation in many respects. *See Harris v. United States,* 768 F.2d 1240, 1242 (11th Cir.1985) ("[I]nternational agreements should be construed more like contracts than statutes."), *vacated and remanded in light of Harris v.*

*United States,* —— U.S. ——, 107 S.Ct. 450, 93 L.Ed.2d 398 (1986); *Board of County Comm'rs v. Aerolineas Peruanasa, S.A.,* 307 F.2d 802, 806 (5th Cir.1962) ("[I]n construing the ... [a] treaty, as other contracts, we give consideration to the intent of the parties so as to carry out their manifest purpose."), *cert. denied,* 371 U.S. 961, 83 S.Ct. 543, 9 L.Ed.2d 510 (1963); *but see Air France v. Saks,* 470 U.S. 392, 397, 105 S.Ct. 1338, 1341, 84 L.Ed.2d 289 (1984) ('[T]reaties are construed more liberally than private agreements, and to ascertain their meaning we may look beyond the written words to the history of the treaty, the negotiations, and the practical construction adopted by the parties.' (quoting *Choctaw Nation of Indians v. United States,* 318 U.S. 423, 431–32, 63 S.Ct. 672, 678, 87 L.Ed. 877 (1943))). Yet, the analogy cannot be extended to the present situation. Treaty interpretation is not the same as contractual interpretation for treaty interpretation is not a determination of fact. Rather, it is well established that treaty interpretation is considered to be a question of law. *E.g., Strong v. United States,* 207 Ct.Cl. 254, 264, 518 F.2d 556, 563, *cert. denied,* 423 U.S. 1015, 96 S.Ct. 448, 46 L.Ed.2d 386 (1975). It must not be forgotten that while treaties have some of the characteristics of voluntary agreements between two sovereigns, by our Constitution they have the force of law. *See* U.S. Const. Art. II, § 2, cl. 2.

▇ Examination of this treaty's negotiating history and purpose does not render its interpretation a matter of fact but merely serves as an aid to the legal determination which is at the heart of all treaty interpretation. *Cf. Quality Furniture Rentals, Inc. v. United States,* 1 Cl.Ct. 136, 141 (1983) ("[W]here ... the language of ... [a] statute is nebulous, a clear expression of legislative intent must be given great weight."); *Witco Chem. Corp. v. United States,* 742 F.2d 615, 623 (Fed.Cir. 1984) ("This lack of clarity in the statutory language highlights our need 'to find that

interpretation which ... [is] most harmonious with its scheme and ... purposes that Congress manifested'" (quoting *N.L.R.B. v. Lion Oil Co.,* 352 U.S. 282, 297, 77 S.Ct. 330, 338, 1 L.Ed.2d 331 (1957))). This court is therefore bound under the doctrine of stare decisis to follow *O'Connor* and to accordingly interpret Article XV(2) as providing United States Commission wages with an exemption only from Panamanian taxation, and not an exemption from United States taxation.

## II. Interpretation of Article XVI(2) of Article IV.

▇ Article XVI(2) of Article IV of the Panama Canal Treaty, Sept. 7, 1977, United States-Panama, T.I.A.S. No. 10032 [hereinafter Article XVI(2) ], also fails to provide plaintiffs with an exemption from United States taxation for wages earned at the Commission.[2] It states, as follows:

Members of the Armed Forces or the civilian component, and dependents, shall be exempt from any taxes, fees, or other charges on income received as a result of their work for the United States Forces or for any of the service facilities referred to in Articles XI or XVIII of this Agreement. Similarly, *as is provided by Panamanian law,* they shall be exempt from payment of taxes, fees, or other charges on income derived from sources outside the Republic of Panama.

*Id.* (emphasis added).

The only pertinent difference between this provision and Article XV(2), which was discussed above, is the phrase "as is provided by Panamanian law." The significance of this phrase however provides no support on behalf of plaintiffs' position.

The Supreme Court in *O'Connor* may not have directly addressed the scope of the exemption provided in Article XVI(2), but its decision clearly resolved Article XVI(2)'s interpretation by implication. In *O'Connor,* "petitioners contend[ed] that the variation in the phraseology of the two

2. Plaintiffs are not members of the Armed Forces or the civilian component but this provision is considered here to facilitate the interests of judicial economy. Plaintiffs' counsel represents approximately fifty other similar tax refund claims, some of whom are members of the Armed Forces or the civilian component and thus base their claims upon Article XVI(2).

provisions [, Article XV(2) and Article XVI(2),] demonstrate[d] that the taxation provision[ ] of ... [Article XV(2) was] meant to be bilateral." *O'Connor v. United States*, — U.S. —, 107 S.Ct. at 352. Yet, the Court found that the absence of the phrase, "as is provided by Panamanian law," was of no significance. Thus, if the addition or absence of this phrase provided no significance between the two provisions, and Article XV(2) only provides an exemption from Panamanian tax, it can also be inferred that Article XVI(2) only provides an exemption from Panamanian taxes, and not an exemption from United States taxes as well.

Even if this court found the difference in phraseology to be significant, the inclusion of the phrase, "as is provided by Panamanian law," would tend to undercut Plaintiffs' position rather than to support it. This inclusion seems to be a clear indication that the exemption of tax in Article XVI(2) was only for Panamanian taxes. Indeed, it was the absence of this limiting language which the taxpayers raised in *O'Connor* as support for their contention that Article XV(2) exempted both United States and Panamanian taxes. *O'Connor v. United States*, — U.S. at —, 107 S.Ct. at 352, *aff'g*, 761 F.2d at 688 (limiting language not discussed in appellate opinion), *rev'g, Coplin v. United States*, 6 Cl.Ct. at 137. Specifically, it was taxpayer's argument that the absence of this language raised a negative inference in favor of Article XV(2). Therefore, it is only logical to conclude that the insertion of this language would raise the inference that Article XVI(2) was only intended to exempt United States citizen Commission wages from Panamanian taxes, but not from United States taxes.

### Conclusion

Plaintiffs' claim of exemption from United States taxes for wages earned while at the Panama Canal Commission must be rejected. No grounds for relief exist under Article XV(2) under *O'Connor* because of the doctrine of stare decisis, and no grounds for relief exist under Article XVI(2) under *O'Connor* because of that decision's clear implications. This court will therefore deny plaintiffs' Motion for Further Proceedings since to do otherwise at this point would be a wasteful use of judicial resources. If plaintiffs believe that *O'Connor* was incorrectly decided in light of some newly found evidence, they must get the Supreme Court to overrule it. Whatever merits and powers this court may possess, it has not been entrusted by the Framers of our Constitution with appellate review of Supreme Court decisions. *See* U.S. Const. Art. III, § 1. Plaintiffs' Motion for Further Proceedings is denied and the Clerk is directed to dismiss plaintiffs' complaint.

IT IS SO ORDERED.

COSTS AWARDED TO THE DEFENDANT.