ESTATE OF JENNIE KINGSLEY FLEMING, DECEASED, DONALD K. FLEMING, EXECUTOR, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Fleming v. Commissioner
Docket No. 10450-88
United States Tax Court
T.C. Memo 1989-675; 1989 Tax Ct. Memo LEXIS 675; 58 T.C.M. (CCH) 1034; T.C.M. (RIA) 89675; December 27, 1989; As amended May 9, 1990 Richard L. Manning, for the petitioner. Diane Berkowitz, for the respondent. WILLIAMS
MEMORANDUM FINDINGS OF FACT AND OPINION WILLIAMS, Judge: The Commissioner determined a deficiency in petitioner's Federal estate tax in the amount of $ 44,076.70 and an addition to tax of $ 8,815.34 pursuant to section 6651(a)(1). [1]
The issues we *677 must decide are: (1) whether petitioner's disclaimer of decedent's interest in her husband's estate was timely within the meaning of section 2518(b)(2)(A), and (2) whether petitioner's failure to file timely its estate tax return was due to reasonable cause and not to willful neglect. FINDINGS OF FACT Donald K. Fleming is the duly appointed executor of petitioner who resided at Park Ridge, Illinois, at the time the petition was filed. The decedent, Jennie Kingsley Fleming, died on May 13, 1984. At her death, decedent was a resident of Glen Ellyn, Illinois. Jennie Kingsley Fleming's husband, Chester, died on September 23, 1983. Under the terms of Chester's will, the residue of his estate was left to decedent, and in the event that she did not survive him, to his children. Donald K. Fleming, son of Chester and Jennie, was the executor of Chester Fleming's estate. On January 24, 1984, Donald petitioned the Circuit Court of DuPage County for the probate of Chester Fleming's will. On January 26, 1984, the will was admitted to probate. The Federal estate tax return filed by Chester Fleming's estate showed no estate tax due. Under the terms of Jennie Kingsley Fleming's will, *678 the residue of her estate was left to Chester, but in the event that he did not survive her, to her children. On May 16, 1984, decedent's will was filed with the Circuit Court of DuPage County and the will was admitted to probate on May 22, 1984. On July 19, 1984, Donald, as the executor of the decedent's estate, executed a petition to disclaim decedent's interest in Chester's estate. Petitioner disclaimed ownership of stocks valued at $ 113,930.31 at decedent's death. On August 1, 1984, Phillip Locke, the attorney for both Chester's and decedent's estates, filed the appropriate petition with the probate court to disclaim decedent's interest in Chester's estate. On August 2, 1984, the probate court granted the petition. Petitioner's Federal estate tax return was due on February 13, 1985. Locke, who was a former probate judge with the Circuit Court of DuPage County, was paid $ 10,000 in legal fees for his services to both estates. Locke had also drafted Chester's will and decedent's will. Locke died prior to the trial of this case. Donald prepared the estate tax return for decedent's estate, obtaining forms and documents from the Internal Revenue Service, making calculations, *679 and seeking advice on estate tax matters. In the course of preparing the Federal estate tax return, Donald discussed with Locke the proper valuation of decedent's house. Shortly after decedent's death, an appraiser recommended by Locke had appraised the house at $ 89,000. Just prior to the due date of the Federal estate tax return, however, Donald received an offer to buy the house for $ 136,500. Donald decided to file the Federal estate tax return valuing the house at $ 89,000 and to amend the return to claim an increased value if the sale was completed. On February 2, 1985, Donald delivered a rough draft of the estate tax return to Locke for review. On February 9, 1985, Donald met Locke and an associate to discuss changes to be made to the Federal estate tax return. On February 10, 1985, a Sunday, Donald made the changes to the estate tax return and typed a final copy. No tax was reported to be due. He advised Locke's associate that he was finished with the return, and a messenger was sent to his office to pick up the return on February 11, 1985, 2 days before it was due. Locke's office was supposed to file the return. On the day that the Federal estate tax return was *680 due, Locke's associate filed with the State of Illinois the state tax return with a copy of the Federal estate tax return attached to it. Approximately 2 weeks later, after the buyer of decedent's house had secured financing, Donald decided to file an amended estate tax return to revise the valuation of decedent's house. He prepared an amended Federal estate tax return and sent it to Locke for review. Donald marked the top of the return "AMENDED." Locke's associate testified that "fairly soon after" she had filed the State of Illinois return, Locke asked her to review an amended Federal estate tax return. At Locke's request she met Donald to persuade him not to file an amended return, but Donald insisted that an amended return was necessary to report the proper value of the house and to pay the additional tax due of $ 3,357. The initial estate tax return prepared by Donald was never filed with respondent. Respondent received the amended return on May 28, 1985, and processed it as the estate's original return. Donald timely filed Federal fiduciary income tax returns for Chester's estate for 1983 and 1984, and for decedent's estate for each of the years 1984 through 1987. *681 None of these returns required review by Locke, and all were timely filed by Donald. Donald took his obligation to file timely tax returns seriously. OPINION Timeliness of Disclaimer
Petitioner argues that the stocks bequeathed by Chester were transferred to decedent upon the admission of Chester's will to probate on January 26, 1984. Petitioner observes that pursuant to section 2518(b)(2)(A), applicable to estates pursuant to section 2046, petitioner had "nine months after * * * the date on which the transfer creating the interest in such person is made" to file the disclaimer. Petitioner's position is that Illinois law provides that the transfer of an interest by will occurs on the date the will is admitted to probate. Petitioner argues that its disclaimer was timely because it was filed within 9 months of the admission of Chester's will to probate. Respondent argues that the regulations promulgated pursuant to section 2518 specifically decree that the transfer of property by will occurs on the date of death. The regulations provide as follows: With respect to transfers made *682 by a decedent at death or transfers which become irrevocable at death, a taxable transfer occurs upon the date of the decedent's death. * * * [Sec. 25.2518-2(c)(3), Gift Tax Regs.] While this language is ambiguous enough to be read as applying only to transfers at death by operation of law, example 5 of section 25.2518-2(c)(5), Gift Tax Regs., confirms respondent's position that the date of death rule applies to transfers by will. Example 5 declares that an interest in real property devised by will that is disclaimed 11 months after the date of death is untimely because "the disclaimer was made later than 9 months after the taxable transfer" which the example states is the date of death. Petitioner agrees that the date of death rule is plainly correct for a transfer by operation of law (such as occurs for jointly held interests with right of survivorship), but argues that the rule is an invalid construction of the statutory term "transfer" for transfers by will. Petitioner finds support in Ill. Ann. Stat. ch. 110 1/2, sec. 4-13 (Smith-Hurd 1978), which provides that "Every will when admitted to probate as provided by this Act is effective to transfer the real and personal *683 estate of the testator bequeathed in that will." Petitioner believes this language must mean that the transfer of assets by will in Illinois occurs on admission of the will to probate. To illustrate his argument, petitioner observes the paradox created by respondent's date of death rule in the circumstances of a will contest. Until the contest is resolved and a will is admitted to probate, no beneficiary has a determinable interest. Furthermore, there can be no "transfer creating the interest in such person" within the meaning of section 2518 until a beneficiary has a determinable interest. Quite plainly, in the absence of a "transfer creating the interest" the 9-month period for measuring the time for making a disclaimer does not begin to run. While petitioner's arguments have appeal, this case simply does not present the facts argued by petitioner. There was no will contest in this case. Petitioner offered no evidence that would suggest difficulties in locating Chester's will or other reasons that might suggest that Chester's death would be an unreasonable starting point for the 9-month disclaimer period. Certainly there were no circumstances that would indicate that decedent's *684 interest in Chester's estate could not be determined at Chester's death. Both decedent and petitioner had sufficient knowledge of the disclaimable interest to take the required steps to disclaim well within the 9-month period commencing at Chester's death. The executor of Chester's estate, Donald Fleming, was also the executor of decedent's estate and was in the best position to know that Chester's will bequeathed the stocks to decedent. Locke, the attorney for both Chester's and decedent's estates, had drafted both Chester's and decedent's wills. Consequently, we do not have before us the issue of whether the regulation would be valid as applied to a case in which, because of a will contest or similar reason, the beneficiary's interest could not have been determined at the date of death so as to cut short the statutory period for making the disclaimer. Petitioner offers no particular reason why the disclaimer was not made within 9 months of Chester's death. In fact, the disclaimer was executed and delivered 9 months and 26 days after Chester's death. [2]
*685 We note that not only do the regulations give petitioner notice that the disclaimer had to be made within 9 months of Chester's death, but also the legislative history of section 2518 suggests that Congress expected that the date of death would usually commence the period within which a disclaimer had to be made. The House Report to the Tax Reform Act of 1976, commenting on the legislation that created section 2518, provides that "a transfer is considered to be made when it is treated as a completed transfer for gift tax purposes with respect to inter vivos transfers or upon the date of the decedent's death with respect to testamentary transfers." H. Rept. 94-1380 (1976), 1976-3 C.B. (Vol. 3) 735, 801 (emphasis added). Petitioner also relies on Kennedy v. Commissioner, 804 F.2d 1332 (7th Cir. 1986), revg. a Memorandum Opinion of this Court, in which the Seventh Circuit stated that a portion of the regulations interpreting section 2518 gave inadequate recognition to the indeterminate nature of an interest arising by right of survivorship. We do not believe that the principles set forth in Kennedy dispose of this case. Aside from petitioner's *686 failure to adduce any evidence that decedent's interest was not determinable at Chester's death, it is far from certain that under Illinois law an interest in personal property bequeathed by will is "transferred" only upon the will's admission to probate. As petitioner admits, for real property devised pursuant to will, Illinois law unquestionably treats the property as having been transferred to the beneficiary as of the date of death. Illinois law may not so explicitly provide for personal property, and petitioner points to this difference as proof that no transfer occurred prior to the admission of the will to probate. Petitioner admits, however, that "a beneficiary's interest [in personal property] may 'accrue' at death." Petitioner's Reply Brief at 4. Nevertheless, petitioner argues that the interest does not "vest" until the interest is distributed. Boghasian v. Mid-City National Bank of Chicago, 25 Ill. App. 2d 445, 167 N.E.2d 442, 446 (1960). The vesting of an interest, however, is not the time at which the period for disclaimer begins. Jewett v. Commissioner, 455 U.S. 305 (1982). The statutory period for disclaiming begins at the time *687 the transfer creates the interest in the person disclaiming. Section 2518(b)(2)(A). If a beneficiary's interest in personal property bequeathed by will "accrues" at the date of death, we believe that decedent's interest was created at Chester's death. Consequently, the time within which petitioner had to disclaim decedent's interest in Chester's estate commenced at the death of Chester and, therefore, petitioner's disclaimer was untimely. Reasonable Cause for Failure to File
The second issue for our decision is whether petitioner's failure to file its estate tax return timely was due to reasonable cause and not willful neglect. The controversy between the parties on this issue turns on their divergent interpretations of United States v. Boyle, 469 U.S. 241 (1985). Respondent argues that Boyle conclusively disposes of petitioner's argument that it could rely on counsel for filing its estate tax return. The Supreme Court held in Boyle that relying on the assurance of counsel that an estate tax return had been filed is not reasonable cause for an executor's *688 failure to file an estate tax return for purposes of section 6651(a)(1). Petitioner counters that Boyle is distinguishable because Donald did everything within his power to assure the timely filing of the estate tax return (except file it himself), and the estate should not be charged with counsel's failure. [3] Petitioner recognizes that the Supreme Court in Boyle held that an executor could not assume that an attorney had complied with the filing requirements of the Code, United States v. Boyle , 469 U.S. at 250. It argues rather that "it is difficult to imagine a circumstance in which an executor made a greater effort to file a timely estate tax return. He obtained forms from the Internal Revenue Service, discussed various issues on that return with the Estate Tax Division, did the calculations, had the calculations reviewed by an experienced attorney to make sure it was accurate, recalculated it according to his attorney's advice, signed and redelivered it in final form to the attorney to 'avoid any major glitches and to be posted' all in advance of the due date of the return." Petitioner argues Donald exercised the "ordinary business care and prudence" *689 required by the regulations promulgated pursuant to section 6651(a)(1). See sec. 301.6651-1(c)(1), Proced. & Admin. Regs. We do not disagree with petitioner that Donald took his filing obligations seriously and expended every reasonable effort to prepare the estate tax return for timely filing. Ultimately, however, Donald relied on Locke to file the return with respondent. Locke was, therefore, petitioner's agent for filing, just as the attorney who neglected to file the estate tax return in Boyle was the agent of the executor of that estate. As the Supreme Court said, Congress has placed the burden of prompt filing on the executor, not on some agent or employee of the executor. The duty is fixed and clear; Congress intended to place upon the taxpayer an obligation to ascertain the statutory deadline *690 and then to meet that deadline, except in a very narrow range of situations * * * Congress has charged the executor with an unambiguous, precisely defined duty to file the return within nine months; extensions are granted fairly routinely. That the attorney, as the executor's agent, was expected to attend to the matter does not relieve the principal of his duty to comply with the statute. [469 U.S. at 249-250.] Donald chose to rely on Locke to file the return. Relying on an attorney to file the estate tax return is not under Boyle a reasonable cause for failure to file a return timely. That is the "bright" line that the Supreme Court consciously drew and announced in United States v. Boyle. Petitioner falls on the wrong side of the line. We agree with respondent that United States v. Boyle requires a decision on this issue in his favor. Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954 as in effect at decedent's death, unless otherwise specified.↩
2. While the parties focus on the date the disclaimer was filed with the probate court, section 2518(b)(2) focuses on the date the disclaimer is received by the transferor or the transferor's legal representative. Sec. 25.2518-2(b)(2), Gift Tax Regs. In this case, the "transferor" was Chester's estate and the "transferor's representative" was Donald. As the executor of Chester's estate, Donald received the disclaimer on the date he executed it as petitioner's executor. In other words, the disclaimer, which section 2518(b)(1) requires to be in writing, was delivered upon execution.↩
3. We do not know the reason for counsel's failure. Petitioner speculates that because the return showed no tax to be due that Locke erroneously thought that no return was due. If this was Locke's view, he never communicated it to his associate, who testified at trial, or to Donald.↩