In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-2639

IN THE MATTER OF:

CASTLETON PLAZA, LP,

*Debtor*.

APPEAL OF:

EL-SNPR NOTES HOLDINGS, LLC

Appeal from the United States Bankruptcy Court
for the Southern District of Indiana, Indianapolis Division.
No. 11-01444-BHL-11—**Basil H. Lorch III**, *Judge*.

ARGUED DECEMBER 6, 2012—DECIDED FEBRUARY 14, 2013

Before EASTERBROOK, *Chief Judge*, and FLAUM and ROVNER, *Circuit Judges*.

EASTERBROOK, *Chief Judge*. Creditors in bankruptcy are entitled to full payment before equity investors can receive anything. 11 U.S.C. §1129(b)(2)(B)(ii). This is the absolute-priority rule. Equity investors sometimes contend that the value they receive from the debtor in bankruptcy is on account of new (post-bankruptcy) investments rather than their old ones. The Supreme

Court held in *Bank of America National Trust & Savings Ass'n v. 203 North LaSalle Street Partnership*, 526 U.S. 434 (1999), that competition is the way to tell whether a new investment makes the senior creditors (and the estate as a whole) better off. A plan of reorganization that includes a new investment must allow other potential investors to bid. In this competition, creditors can bid the value of their loans. *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 132 S. Ct. 2065 (2012). The process protects creditors against plans that would give competing claimants too much for their new investments and thus dilute the creditors' interests.

This appeal presents the question whether an equity investor can evade the competitive process by arranging for the new value to be contributed by (and the new equity to go to) an "insider," as 11 U.S.C. §101(31) defines that term. The bankruptcy judge answered yes; our answer is no. Competition is essential whenever a plan of reorganization leaves an objecting creditor unpaid yet distributes an equity interest to an insider.

The material facts are simple. Castleton Plaza, the debtor, owns a shopping center in Indiana. George Broadbent owns 98% of Castleton's equity directly and the other 2% indirectly. EL-SNPR Notes Holdings is its only secured lender. The note carries interest of 8.37% and has several features, such as lockboxes for tenants' rents and approval rights for major leases, designed for additional security. The note matured in September 2010, and Castleton did not pay. Instead it commenced a bankruptcy proceeding. About a year later

Castleton proposed a plan of reorganization under which $300,000 of EL-SNPR's roughly $10 million secured debt would be paid now and the balance written down to roughly $8.2 million, with the difference treated as unsecured. The $8.2 million secured loan would be extended for 30 years, with little to be paid until 2021, and the rate of interest cut to 6.25%, exceptionally low for credit representing 97% of the estimated value of the borrower's assets. All of the note's extra security features, such as the rental lockbox and approval rights, would be abolished.

Unpaid creditors normally receive the equity in a reorganized business. Castleton proposed a plan that cut the creditors out of any equity interest. Since the plan pays EL-SNPR less than its contractual entitlement, §1129(b)(2)(B)(ii) provides that George Broadbent cannot retain any equity interest on account of his old investment—and *203 North LaSalle* requires an auction before he could receive equity on account of a new investment. The proposed plan of reorganization nominally left George empty-handed. But it provided that 100% of the equity in the reorganized Castleton would go to Mary Clare Broadbent, George's wife, who would invest $75,000. Mary Clare owns all of the equity in The Broadbent Company, Inc., which runs Castleton under a management contract. George is the CEO of The Broadbent Company and receives an annual salary of $500,000 for his services. The plan of reorganization provides that the management contract between Castleton and The Broadbent Company would be continued.

EL-SNPR believes that Castleton's assets have been undervalued—see 2011 Bankr. LEXIS 3804 (Bankr. S.D. Ind. Sept. 30, 2011) (estimating the real estate's value at $8.25 million)—and that, given the dramatic decrease in the amount Castleton owes on the loan, the equity in the reorganized business will be worth more than $75,000. Cf. *In re River East Plaza, LLC*, 669 F.3d 826 (7th Cir. 2012). It offered $600,000 for the equity and promised to pay all other creditors 100¢ on the dollar. (Castleton's plan, by contrast, offers only 15% on unsecured claims, paid over five years.) Castleton rejected this proposal, though a revised plan did increase Mary Clare Broadbent's investment to $375,000. EL-SNPR asked the bankruptcy judge to condition that plan's acceptance on Mary Clare making the highest bid in an open competition. But the bankruptcy judge held that competition is unnecessary and confirmed the plan as proposed.

The judge certified a direct appeal under 28 U.S.C. §158(d)(2)(A). We accepted it because no court of appeals has addressed, after *203 North LaSalle*, whether competition is essential when a plan of reorganization gives an insider an option to purchase equity in exchange for new value. Bankruptcy judges have disagreed on the answer; we do not attempt to catalog the decisions.

The bankruptcy court thought competition unnecessary because Mary Clare Broadbent does not own an equity interest in Castleton, and §1129(b)(2)(B)(ii) deals only with "the holder of any claim" that is junior to the impaired creditor's claim. Yet *203 North LaSalle* did not

interpret the language of §1129(b)(2)(B)(ii), which does not speak to new-value plans. The Court devised the competition requirement to curtail evasion of the absolute-priority rule. A new-value plan bestowing equity on an investor's spouse can be just as effective at evading the absolute-priority rule as a new-value plan bestowing equity on the original investor. For many purposes in bankruptcy law, such as preference recoveries under 11 U.S.C. §547, an insider is treated the same as an equity investor. Family members of corporate managers are insiders under §101(31)(B)(vi). In *203 North LaSalle* the Court remarked on the danger that diverting assets to insiders can pose to the absolute-priority rule. 526 U.S. at 444. It follows that plans giving insiders preferential access to investment opportunities in the reorganized debtor should be subject to the same opportunity for competition as plans in which existing claim-holders put up the new money.

There can be no doubt that George Broadbent would receive value from the equity that Mary Clare Broadbent stands to obtain under the plan of reorganization. One form of value would be the continuation of George's salary as CEO of The Broadbent Company. Another would come through an increase in the family's wealth. Indiana is not a community-property state, but one spouse usually receives at least an indirect benefit from another's wealth, and Indiana treats each spouse as having a presumptive interest in the other's wealth. See Ind. Code §31-15-7-4. The fact that each spouse's wealth benefits the whole family is a principal reason why the statutory definition of insider includes family mem-

bers—and why federal judges must recuse themselves when spouses or children living in the household have financial interests in litigants. 28 U.S.C. §455(b)(4). And we cannot overlook the fact that George Broadbent, through his control of Castleton, set the option's price at $75,000 (and then $375,000) rather than some higher number. The difference between $375,000 and the price the option would fetch in competition is value to the entire Broadbent family.

In tax law, the exercise of a general power of appointment is treated as income to the holder. See *Jewett v. CIR*, 455 U.S. 305, 318 (1982). Thus if George Broadbent had directed The Broadbent Company to remit some of his salary to his spouse, child, or the supplier of the family's new piano, the money still would be treated as income to George and taxed accordingly. Similarly, if George had a discretionary power under a trust, and could direct assets to either Mary Clare or himself, the value would be treated as income to George even if the trust paid Mary Clare. That's fundamentally what happened here. George had control over Castleton and used his authority to propose a plan that directed a valuable opportunity (an option to buy all of the equity in the reorganized firm) to his spouse. Cf. *Kham & Nate's Shoes No. 2 v. First Bank of Whiting*, 908 F.2d 1351, 1360 (7th Cir. 1990). Since the exercise of a power of appointment is treated as income in tax law, it should be treated as income for the purpose of §1129(b)(2)(B)(ii) too. Thus, under the plan of reorganization, George receives value on account of his investment, which gave him control over the plan's details. The absolute-priority rule therefore applies despite the fact that Mary Clare had not

invested directly in Castleton. This reinforces our conclusion that competition is essential. *In re Wabash Valley Power Association, Inc.*, 72 F.3d 1305, 1313–20 (7th Cir. 1995), on which Castleton relies, does not hold otherwise—and at all events *Wabash* predates *203 North LaSalle* and *RadLAX*. The Supreme Court's decisions must prevail.

None of the considerations we have mentioned depends on whether Castleton proposed the plan during the exclusivity period. See 11 U.S.C. §1121(b) (only a trustee or debtor in possession may propose a plan of reorganization during the first 120 days, or any additional time allowed by the bankruptcy judge). Nor does the rationale of *203 North LaSalle* depend on who proposes the plan. Competition helps prevent the funneling of value from lenders to insiders, no matter who proposes the plan or when. An impaired lender who objects to *any* plan that leaves insiders holding equity is entitled to the benefit of competition. If, as Castleton and the Broadbents insist, their plan offers creditors the best deal, then they will prevail in the auction. But if, as EL-SNPR believes, the bankruptcy judge has underestimated the value of Castleton's real estate, wiped out too much of the secured claim, and set the remaining loan's terms at below-market rates, then someone will pay more than $375,000 (perhaps a *lot* more) for the equity in the reorganized firm.

The judgment of the bankruptcy court is reversed, and the case is remanded with directions to open the proposed plan of reorganization to competitive bidding.