69 F.3d 1404
 76 A.F.T.R.2d 95-7409, 95-2 USTC P 50,618
 NORWEST CORPORATION, formerly known as Northwest
Bancorporation and Affiliated Companies, and
Affiliated Companies, Appellant/Cross-appellee,
Norwest Bank, Fort Dodge, N.A., formerly First National
Bank, and; Norwest Bank, Marion, N.A., formerly
First National Bank of Marion,
v.
COMMISSIONER OF INTERNAL REVENUE, Appellee/Cross-appellant.
 Nos. 93-1274, 93-1741.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Nov. 8, 1993.
Decided Nov. 14, 1995.
 
 Thomas C. Durham, Chicago, Illinois, argued (Joel V. Williamson, Arthur I. Gould, and Roger J. Jones, on the brief), for appellant.
 Charles Bricken, U.S. Dept. of Justice, Washington, DC, argued (David English Carmack, on the brief), for appellee.
 Before McMILLIAN and MAGILL, Circuit Judges, and JACKSON,* District Judge.
 McMILLIAN, Circuit Judge.
 
 
 1
 Norwest Corporation and Affiliated Companies (Norwest) appeal from a final order entered in the United States Tax Court[1] assessing and ordering Norwest to pay income tax deficiencies for its 1980 and 1982 taxable years. Norwest Corp. v. Commissioner, 63 T.C.M. (CCH) 3023, 1992 WL 103666 (1992). For reversal, Norwest claims that the tax court improperly held that it was not entitled to foreign tax credits (FTCs) under 26 U.S.C. Sec. 901 for income taxes paid to the Brazilian government pursuant to Brazil's tax on interest income earned by foreign lenders. Norwest claims the Commissioner erroneously determined it was not entitled to FTCs for portions of the tax the Brazilian government returned to borrowers pursuant to its "pecuniary benefit" program. The Commissioner cross-appeals the tax court's rejection of her alternative defense that Norwest deserved no FTCs because Norwest was not legally liable for the tax. For the reasons discussed below, we affirm the decision of the tax court and deny the cross-appeal.
 
 I. Background
 
 2
 Norwest is the parent company of certain corporations that filed consolidated income tax returns for 1980 and 1982. During those years Norwest made loans to Brazilian borrowers, and Brazil imposed a tax on interest earned by foreign lenders of 25% of the lenders' interest income per payment (local tax). The Brazilian government collected this local tax by withholding the full amount of the local tax when borrowers purchased foreign currency to make their interest payments. Withholding was mandatory because Brazilian law required borrowers to obtain their foreign currency from local banks. Brazilian law also granted a "pecuniary benefit," or subsidy, to those borrowing from foreign lenders. When such borrowers would purchase foreign currency for interest payments, the bank handling the transaction would also credit the borrower's account for the pecuniary benefit. The government set the pecuniary benefit as a percentage of the local tax that the borrower was required to set aside through the withholding system.
 
 
 3
 Brazil allowed its larger banks to borrow money from foreign sources and then re-lend the money to secondary local, or "repass," borrowers. The Brazilian government extended the pecuniary benefit to the repass borrowers during the years at issue by requiring the initial borrowers to allocate the subsidies pro-rata to the repass borrowers.
 
 
 4
 During the years at issue, Norwest made loans to Brazilian borrowers. Some of these borrowers executed repass loans. Norwest, on its 1980 and 1982 tax returns, desired to claim FTCs under 26 U.S.C. Sec. 901[2] for the amounts withheld for the local tax. Norwest, however, subtracted from this amount the subsidies granted under the pecuniary benefit system, ostensibly to comply with revenue and private letter rulings by the Commissioner. Norwest subsequently filed a petition for redetermination with the tax court in 1986, claiming an overpayment of tax and seeking a refund of these amounts. The Commissioner disallowed this request, and Norwest filed suit in the tax court. The parties submitted the case with all facts fully stipulated. The tax court rejected the Commissioner's argument that Norwest was not legally liable for the local tax, and thus not entitled to a FTC altogether, and concluded that Norwest was entitled to a FTC for part of the local tax. This appeal by Norwest and cross-appeal by the Commissioner followed.II. Discussion
 
 
 5
 A. The Commissioner's Cross-Appeal--Legal Liability for Tax
 
 
 6
 Under 26 U.S.C. Sec. 901, a domestic corporation may claim as a credit (subject to limitations inapplicable in the present case) against its federal income tax liability "the amount of any income ... taxes paid or accrued during the taxable year to any foreign country." The purpose of the FTC is to reduce international double taxation. See American Chicle Co. v. United States, 316 U.S. 450, 451, 62 S.Ct. 1144, 1144-45, 86 L.Ed. 1591 (1942). A foreign tax is creditable only for the taxpayer that is legally liable for the tax. Temp.Treas.Reg. Sec. 4.901-2(g)(1), 45 Fed.Reg. 75655 (Nov. 17, 1980), 26 C.F.R. Sec. 4.901-2(g)(1) (1981). The liability of the United States taxpayer for the foreign tax is determined in accordance with United States tax principles. Biddle v. Commissioner, 302 U.S. 573, 579, 58 S.Ct. 379, 381, 82 L.Ed. 431 (1938).
 
 
 7
 We address the Commissioner's cross-appeal first because, if successful, this argument renders Norwest's appeal moot. The Commissioner argues that Norwest is not legally liable for the local tax, and thus not entitled to FTCs for the local tax, because only the borrower was legally obligated to withhold it. We review the legal conclusions of the tax court de novo. E.g., Sargent v. Commissioner, 929 F.2d 1252, 1254 (8th Cir.1991).
 
 
 8
 We reject this argument as did the tax court below and the other courts which have addressed this question. See Continental Illinois Corp. v. Commissioner, 998 F.2d 513, 518-19 (7th Cir.1993) (Continental ), cert. denied, --- U.S. ----, 114 S.Ct. 685, 126 L.Ed.2d 652 (1994); Continental Illinois Corp. v. Commissioner, 55 T.C.M. (CCH) 1325, 1330, 1988 WL 75882 (1988), aff'd sub nom. Citizens & Southern Corp. v. Commissioner, 919 F.2d 1492 (11th Cir.1990) (per curiam); Nissho Iwai American Corp. v. Commissioner, 89 T.C. 765, 773-74, 1987 WL 45300 (1987) (Nissho ). It is a well-settled principle under United States tax law that the person obligated to pay the tax is not necessarily the same person to whom legal liability attaches. Nissho, 89 T.C. at 773, 1987 WL 45300. Nissho, which the tax court here cites, compared the Brazilian system to the wage withholding system in the United States under which employees remain legally liable for income taxes, although the employer is the person obligated to withhold the tax and pay the tax to the government. Id. Similarly, the Brazilian borrower is only charged with an administrative function. As explained, under Brazilian law, interest paid to foreign lenders like Norwest is subject to the local tax. The Brazilian borrower is required to withhold the local tax from each interest payment. Id. at 774, 1987 WL 45300, citing Gleason Works v. Commissioner, 58 T.C. 464, 478, 1972 WL 2582 (1972) (noting that liability for taxes "does not rest upon a search for the person from whom the tax is collectible but rather for the person upon whom the tax is imposed"). The Commissioner argues that in Brazil only borrowers have an enforceable legal obligation because withholding is the exclusive means of collection. The Commissioner's argument is unduly formalistic because Brazilian banking authorities will not allow the Brazilian borrower to buy foreign currency to pay interest to foreign lenders without proof it has withheld and paid the local tax. The lender thus could not escape liability and the absence of a law specifically applying to the lender is irrelevant. See Continental, 998 F.2d at 518. "[T]he [local] tax is 'paid' by the [foreign] lender even if the [Brazilian] borrower operates as [its] agent for payment and even if the [Brazilian government's] tax enforcement guns are trained on the agent [that is, the Brazilian borrower,] rather than on the principal [that is, the foreign lender]." Id. at 519. For the foregoing reasons, the Commissioner's cross-appeal is denied.
 
 
 9
 B. Norwest's Appeal--Pecuniary Benefit Program
 
 
 10
 During the years at issue, Temp.Treas.Reg. Sec. 4.901-2(f)(3)(i)(A), which is no longer in force, disallowed taxpayers from claiming as a FTC amounts "used directly or indirectly by the [foreign] country to provide a subsidy by any means (such as through a refund or credit) to the taxpayer." Temp.Treas.Reg. Sec. 4.901-2(f)(3)(ii)(B) further provided that "[a] foreign country is considered to provide a subsidy" to the taxpayer if (1) the foreign country provides a subsidy to another person with whom the taxpayer "[e]ngages in a business transaction" and (2) the subsidy received by such other person is determined directly or indirectly "by reference to the amount of income tax, or the base used to compute the income tax" imposed on the taxpayer. Subsection Sec. 4.901-2(g)(1) provided in part that "[i]ncome tax is paid or accrued by or on behalf of a person if foreign law imposes legal liability for income tax on that person and income tax is paid or accrued under paragraph (f) of this section." In other words, the regulation disallows a FTC to the extent that the foreign tax is used to subsidize the taxpayer. See Continental, 998 F.2d at 519. The regulation has been codified essentially without any change in wording in 26 U.S.C. Sec. 901(i).[3] The tax court below held that payments under Brazil's pecuniary benefit program met both requirements of Sec. 4.901-2(f)(3)(ii)(B) and thus constituted a subsidy to Norwest under Sec. 4.901-2(f)(3)(i)(A).
 
 
 11
 Norwest and the amici make related arguments challenging the regulation. Norwest and amicus Bankers Trust argue that Temp.Treas.Reg. Sec. 4.901-2(f)(3)(ii)(B) is inconsistent with the language of Sec. 901, which allows a credit for taxes "paid or accrued" to the foreign government, and inconsistent with the purpose of 26 U.S.C. Sec. 901, which is to prevent double taxation. They argue that the regulation imposes double taxation upon Norwest on account of a subsidy from which Norwest received neither a decrease in its taxes nor an economic benefit. Norwest and amicus First Chicago Corporation (First Chicago) argue that the use of the word "considered" in Sec. 4.901-2(f)(3)(ii) indicates that the regulation only creates a rebuttable presumption that a payment qualifies as a subsidy under the general rule set out in Temp.Treas.Reg. Sec. 4.901-2(f)(3)(i)(A). This presumption, they argue, is rebutted if the taxpayer can show that it received no economic benefit from the subsidy. To the extent the taxpayer received no economic benefit, then the payment would not be a subsidy and would not reduce the FTC. The Commissioner disagrees, arguing that the plain language of the regulation supports no such rebuttable presumption.
 
 
 12
 We note that the Commissioner's interpretations of treasury regulations are entitled to substantial deference. Jewett v. Commissioner, 455 U.S. 305, 318, 102 S.Ct. 1082, 1090, 71 L.Ed.2d 170 (1982); see also Ford Motor Credit Co. v. Milhollin, 444 U.S. 555, 566, 100 S.Ct. 790, 797, 63 L.Ed.2d 22 (1980). Courts customarily defer to a treasury regulation that implements the congressional mandate in some reasonable manner. Cottage Savings Ass'n v. Commissioner, 499 U.S. 554, 560-61, 111 S.Ct. 1503, 1507-08, 113 L.Ed.2d 589 (1991) (citing National Muffler Dealers Ass'n v. United States, 440 U.S. 472, 476-77, 99 S.Ct. 1304, 1306-07, 59 L.Ed.2d 519 (1979) (National Muffler ) (regulation may have particular force if substantially contemporaneous construction of statute by those presumed to have been aware of Congressional intent)); see also Chevron, U.S.A., Inc. v. Natural Resources Defense Council, 467 U.S. 837, 843, 104 S.Ct. 2778, 2781-82, 81 L.Ed.2d 694 (1984). Courts should not overrule such a regulation "except for weighty reasons." Bingler v. Johnson, 394 U.S. 741, 750, 89 S.Ct. 1439, 1445, 22 L.Ed.2d 695 (1969) (citing Commissioner v. South Texas Lumber Co., 333 U.S. 496, 501, 68 S.Ct. 695, 698, 92 L.Ed. 831 (1948)). In National Muffler, the Supreme Court set out factors to determine the reasonableness of a treasury regulation. These factors include whether "the regulation harmonizes with the plain language of the statute, its origin, and its purpose," and "the consistency of the Commissioner's interpretation." 440 U.S. at 477, 99 S.Ct. at 1307.
 
 
 13
 We think the regulation reasonably interprets the statutory language "paid or accrued" to mean circumstances in which the foreign tax, here the local tax on interest payments made to foreign lenders, has in substance been paid. The regulation reasonably views the payment of the local tax and the receipt of the pecuniary benefit or subsidy together in order to determine the amount of foreign taxes creditable for purposes of 26 U.S.C. Sec. 901. See Nissho, 89 T.C. at 777, 1987 WL 45300 (viewing payment of tax and receipt of subsidy as "in lockstep"). This interpretation is also consistent with the intent of Congress to reduce international double taxation. Norwest can claim a foreign tax credit for the amount of Brazilian taxes it paid, that is, as discussed below, the amount of the local tax reduced by the pecuniary benefit or subsidy. Norwest is not subject to double taxation because the pecuniary benefit or subsidy was not paid to the Brazilian government. This is because the pecuniary benefit or subsidy operated as a rebate of most of the local tax, in effect reducing the tax rate by 80%, from 25% to 5%. See Continental, 998 F.2d at 519.
 
 
 14
 In addition, we agree with the tax court that the degree of the actual economic benefit[4] conferred upon the taxpayer by the subsidy is not relevant under the regulation. The regulation defines certain amounts of tax as subsidies without reference to actual economic benefit. "The regulation is clear as a bell, and its validity [on this point] cannot be seriously questioned...." Id. at 520.
 
 
 15
 The IRS regulation ... elides a difficult factual inquiry [into the extent of the taxpayer's economic benefit] by deeming the taxpayer subsidized if the [foreign] country subsidizes a person with whom the taxpayer "engages in a business transaction," provided the subsidy "is determined directly or indirectly by reference to the amount of income tax ... imposed by the country on [that] person with respect to such transaction." ... Just as the IRS must be given leeway in deciding what proof to require that a tax has actually been paid, so it must be given leeway in deciding when a rebate to a foreign business partner of a U.S. taxpayer should be deemed a subsidy to the taxpayer, disentitling [it] to a foreign tax credit.
 
 
 16
 Id. The reduction in the local tax rate constituted an indirect subsidy within the plain language of the regulation: it is provided to the Brazilian borrower that engaged in a business transaction with the taxpayer and is calculated as a specific percentage of the tax imposed on the payment to the taxpayer.
 
 
 17
 Amicus Bankers Trust also argues that the regulation is unreasonable because it reflects an abrupt shift in the Commissioner's position, citing Rowan Cos. v. United States, 452 U.S. 247, 263, 101 S.Ct. 2288, 2297, 68 L.Ed.2d 814 (1981) (Rowan ), where the Court refused to defer to "inconsistent and unexplained" interpretations propounded by the Commissioner. While such a shift in position can be relevant to determining reasonableness, it is not determinative. The Supreme Court has held that "it is well established that the Commissioner may change an earlier interpretation of the law." Dickman v. Commissioner, 465 U.S. 330, 343, 104 S.Ct. 1086, 1093-94, 79 L.Ed.2d 343 (1984). Rowan, however, can be distinguished from the present case because the Commissioner's position in Rowan was also inconsistent with the Court's analysis of the language and congressional intent. 452 U.S. at 255-58, 101 S.Ct. at 2293-95. Amicus Bankers Trust advances other arguments addressing the reasonableness of the regulation, none of which we accept.[5] We hold that Temp.Treas.Reg. Sec. 4.901-2(f) is valid and hold that the subsidies provided to borrowers under the pecuniary benefit program meet the requirements of Sec. 4.901-2(f)(3)(ii)(B), and thus are indirect subsidies to Norwest. See Continental, 998 F.2d at 520. Accordingly, Norwest is not entitled to FTCs for those amounts.
 
 
 18
 We also hold that Norwest is not entitled to FTCs for amounts of the pecuniary benefit or subsidies allocated to repass borrowers. Norwest and amicus First Chicago argue that Temp.Treas.Reg. Sec. 4.901-2(f)(3)(ii)(B) does not apply because repass borrowers are not parties to "a business transaction" with the foreign lender (the taxpayer). We agree with the Commissioner and the tax court that the transactions between the foreign lender and the primary borrower are separate from the transactions between the primary and repass borrowers. However, when the primary borrower made the interest payment to the foreign lender, it received the subsidy which it was required to pass along to the repass borrowers by Brazilian law. We agree with the Seventh Circuit that repass loans fall "within the letter as well as the spirit of the subsidy regulation." Continental, 998 F.2d at 520.
 
 
 19
 For the foregoing reasons,[6] the order of the tax court is affirmed and the cross-appeal is denied.
 
 
 
 *
 The Honorable Carol E. Jackson, United States District Judge for the Eastern District of Missouri, sitting by designation
 
 
 [1]
 The Honorable Julian I. Jacobs, Judge, United States Tax Court
 
 
 [2]
 Unless otherwise noted, all statutory citations are for the years at issue
 
 
 [3]
 Title 26 U.S.C.A. Sec. 901 (West Supp.1995) provides in part:
 (a) Allowance of credit.--If the taxpayer chooses to have the benefits of this subpart, the tax imposed by this chapter shall, subject to the limitation of section 904, be credited with the amounts provided in the applicable paragraph of subsection (b) plus, in the case of a corporation, the taxes deemed to have been paid under sections 902 and 960....
 (b) Amount allowed.--Subject to the limitation of section 904, the following amounts shall be allowed as the credit under subsection (a):
 (1) Citizens and domestic corporations.--In the case of a citizen of the United States and of a domestic corporation, the amount of any income, war profits, and excess profits taxes paid or accrued during the taxable year to any foreign country or to any possession of the United States; ...
 ....
 (i) Taxes used to provide subsidies.--Any income, war profits, or excess profits tax shall not be treated as a tax for purposes of this title to the extent--
 (1) the amount of such tax is used (directly or indirectly) by the country imposing such tax to provide a subsidy by any means to the taxpayer, a related person (within the meaning of section 482), or any party to the transaction or to a related transaction, and
 (2) such subsidy is determined (directly or indirectly) by reference to the amount of such tax, or the base used to compute the amount of such tax.
 
 
 [4]
 As noted in Continental Illinois Corp. v. Commissioner, 998 F.2d 513, 519-20 (7th Cir.1993) (Posner, J.) (citing Joseph Isenbergh, The Foreign Tax Credit: Royalties, Subsidies, & Creditable Taxes, 39 Tax L.Rev. 227, 244-47 (1984); 1 Joseph Isenbergh, International Taxation p 18.10.2, at 507-08 (1990)), cert. denied, --- U.S. ----, 114 S.Ct. 685, 126 L.Ed.2d 652 (1994), the regulation avoids the necessity of economic benefit analysis by adopting a "bright line" definition of subsidy for purposes of entitlement to the foreign tax credit:
 "Subsidy" is a tricky concept. It is by no means clear that the Brazilian tax rebate [referring to the pecuniary benefit program] subsidized, in the sense of conferring an actual benefit upon, American net lenders like Continental [and Norwest]. Indeed, insofar as the interest rate had been fixed in the loan contract before the rebate was instituted, only the borrowers benefited; for we noted at the outset that the difference between a net and a gross loan is that a net loan allocates the risk and benefit of any change in the tax rate to the borrower because the lender's return is specified net of tax. Even if not frozen by the contract the interest rate might not rise by the amount of the subsidy. It is true that the subsidy would make the borrowers more eager to take out foreign loans and that an increase in demand usually results in an increase in price, but the increase in demand need not be proportionally equal to the increase in price and it would be tempered here by competition among the foreign lenders; also, Brazil imposed ceilings on interest rates. Figuring out who gets how much of the benefit of a subsidy is like figuring out who really pays a tax, since the nominal taxpayer has an incentive to shift it as best he can forward or backward. It all depends on contract terms and on conditions of demand and supply.
 ... The IRS can hardly be faulted for having chosen a bright-line approach in preference to interminable investigation of the mysteries of public finance, much as the latter approach might appeal to the legal, accounting, and economic-consulting communities.
 
 
 [5]
 Amicus Bankers Trust also argues that Temp.Treas.Reg. Sec. 4.901-2(f)(3) is unreasonable because it (1) does not represent a contemporaneous interpretation of the statute, (2) does not represent a long-standing interpretation of the statute, (3) is an interpretative regulation entitled to less deference, and (4) involves an impermissible attempt to legislate
 
 
 [6]
 Because we decide this appeal on the basis of the regulations, we need not address Norwest's argument that the tax court erroneously evoked the "substance over form" doctrine